

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-30-1997

# Ryder v. Westinghouse Elec

Precedential or Non-Precedential:

Docket
96-3414

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"Ryder v. Westinghouse Elec" (1997). *1997 Decisions.* Paper 235.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/235

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed September 30, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 96-3414

JOHN M. RYDER

v.

WESTINGHOUSE ELECTRIC CORPORATION,

        Appellant.

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(D.C. Civ. No. 93-cv-01945)

Argued April 14, 1997

Before: GREENBERG, ALITO and SEITZ, Circuit Judges.

Filed: September 30, 1997

        SAMUEL J. CORDES, ESQUIRE
          (Argued)
        ANDREW G. SYKES, ESQUIRE
        MARY R. ROMAN, ESQUIRE
        Ogg, Jones, Cordes & Ignelzi
        245 Fort Pitt Boulevard
        Pittsburgh, PA 15222

          Attorney for Appellee


        JEROME SHESTACK, ESQUIRE
          (Argued)
        JOSEPH C. CRAWFORD, ESQUIRE
        JONATHAN D. WETCHLER,
          ESQUIRE
        Wolf, Block, Schorr & Solis-Cohen
        S.E. Corner 15th & Chestnut Streets
        Packard Building, 12th Floor
        Philadelphia, PA 19102

        RICHARD J. ANTONELLI, ESQUIRE
        Buchanan Ingersoll Professional
          Corporation
        One Oxford Centre

301 Grant Street
20th Floor
Pittsburgh, PA 15219-1410

 Attorneys for Appellant

CATHY VENTRELL-MONSEES
THOMAS W. OSBORNE
MELVIN RADOWITZ
American Association of Retired
 Persons
601 E Street, N.W.
Washington, D.C. 20049

 Attorneys for Amicus Curiae
American Association of Retired
 Persons

OPINION OF THE COURT

SEITZ, Circuit Judge.

Defendant, Westinghouse Electric Corporation ("Westinghouse"), appeals from a judgment, entered on a jury verdict, in favor of Plaintiff, John M. Ryder ("Ryder"). This action is based on the Age Discrimination in Employment Act, 29 U.S.C. SS 621-634 (1994) ("ADEA"),

2

and the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. Ann. SS 951-963 ("PHRA").1

Ryder was employed as a staff assistant to the group controller for Westinghouse's Power Systems Group from 1983 until April 6, 1993. Prior to assuming this position, Ryder had been employed at Westinghouse in various other capacities since January 7, 1963. On April 6, 1993, Lou Facchini ("Facchini"), who had been the group controller for the Power Systems Group since 1991 and who had "inherited" Ryder from the previous controller, terminated Ryder's employment under Westinghouse's permanent job separation program.2 At the time of his termination, Ryder was fifty-two years old.

Two days after leaving Westinghouse, Ryder filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging that Westinghouse wilfully terminated him because of his age. After waiting for the required time periods to elapse, Ryder filed his complaint in the district court on November 11, 1993. A two-week jury trial concluded with the jury's verdict in favor of Ryder, and

with an award in the amount of $241,909. Westinghouse filed this timely appeal.

Westinghouse attacks the district court's management of the trial in two separate respects, each of which, Westinghouse submits, requires us to reverse the judgment and remand this case for a new trial. We turn to those issues.

_____

1. The district court exercised subject matter jurisdiction over Ryder's ADEA claim pursuant to 29 U.S.C. S 623(a), 626(c)(1) and 28 U.S.C. S 1331, and based jurisdiction over Ryder's PHRA claim on 28 U.S.C. S 1367. We have jurisdiction under 28 U.S.C. S 1291.

2. Facchini testified that he terminated Ryder only after trying unsuccessfully to place him elsewhere in the company. Westinghouse explained that by eliminating Ryder's position, as opposed to terminating him for cause or laying him off, it could offer Ryder a permanent job separation. The parties stipulated that under this arrangement, Ryder received, at the time of his termination, a lump-sum payment of his vested pension benefit amounting to $172,000, along with a payment of $391,027 in deferred compensation. By mutual agreement of the parties, Ryder actually continued in his position until August 31, 1993.

I.

Admission of the "Chairman's Initiative Memorandum"

Westinghouse first challenges the admission of the so-called "Chairman's Initiative Memorandum," which was authored by Michael Jordan, Westinghouse's CEO, and which contained allegedly ageist comments made by unidentified Westinghouse executives who were authorized to make personnel decisions.3 These comments were made at a series of meetings attended by Jordan, who became CEO in June of 1993, approximately two months after Ryder's "official termination." Also in attendance was Gary Clark, who was acting as CEO when Ryder was terminated, and who became president of the company after Jordan was hired.

The controversial comments reflected in the memorandum were made at a meeting held on July 6-7, 1994, the topic of which was "Employee Selection Development Rewards and Costs." App. at 54. Jordan's memorandum was distributed to "All Previous Attendees of Chairman's Initiative," and included his introductory comments that the summaries contained "some good ideas"

and were "long, but valuable." Id. at 45. Some of the allegedly ageist comments included:

> Participant: In many of our businesses we have an older workforce. As a result, that workforce gets a higher salary. Additionally, our low growth businesses can strain opportunities for younger workers. Somehow we must provide those opportunities. We have to get the

---

3. Facchini, who attended some but not all of the meetings, testified at trial that those in attendance were of the "general manager" level, who "ma[d]e decisions as far as hiring andfiring people." App. at 426. Based on this testimony, the district court noted that the attendees had "hiring and firing responsibilities." Id. at 430.

4

> "blockers" out of the way.
>
> . . . .
>
> Participant: Westinghouse has been pretty paternalistic in the past and we've ended up with too much dead wood in the organization.
>
> Jordan: Yes, and that's a big issue because as you squeeze the infrastructure, you want your best talent to stay in the organization.
>
> . . . .
>
> Participant: We really haven't hired much over the last 10-15 years. As a result, we have a hole in terms of people development. We don't have enough people in the organization ages 30-40. Somehow we have to anticipate what our requirements are for people three years down the road and be willing to hire people for the future.
>
> Jordan: That's the issue at many business units. You have to have regeneration.
>
> . . . .
>
> Participant: Blockers are always an issue but they're

less of an issue when you are in a growth mode. Removing blockers is very important when you're in a downsizing mode because you don't have the kinds of opportunities that growth provides you.

Jordan: People down in the organization know who they are. . . . [W]e have to put ourselves in a position of getting high pots into more responsible jobs and move the blockers aside. That's hard to do, and no one likes to do it, but we're paying the price now for our inability to do it in the past.

. . . .

5

Jordan: What we need to do as the leadership of this organization, is force ourselves to those standards so that the best persons get into the right positions. An eager high-energy person will get more done in one month than someone who has retired in place will do in one year.

. . . .

Jordan: We seem to be missing the people in the middle of the age range who have talent, the willingness and the horsepower to take on risky change projects. We don't have those types pushing up from the bottom. We have a kind of regeneration gap here. We have to have those kinds of people. Not only are these individuals the leadership of tomorrow, these are the people that create ferment down in the ranks that pushes against the status quo in the system.

App. at 54-59.4

Westinghouse contends that any relevancy that this document may have to Ryder's termination one year prior to the chairman's initiative meeting is substantially outweighed by its highly prejudicial nature. Westinghouse also argues that the document constitutes inadmissible hearsay. Ryder responds that the document was properly admitted as circumstantial evidence of the corporate culture existing when Ryder was terminated one year

earlier.

We review the district court's evidentiary rulings for abuse of discretion. Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1076 (3d Cir. 1996) (en banc), cert. denied, 117 S. Ct. 2532 (1997). We will not disturb the district court's application of a balancing test under Federal Rule of Evidence 403 unless it is "arbitrary and irrational."

_____

4. At trial, Facchini agreed with Ryder's counsel's characterization of a "blocker" as "somebody who is preventing somebody younger from getting through to another executive level...." App. at 482.

6

Abrams v. Lightolier Inc., 50 F.3d 1204, 1213 (3d Cir. 1995) (internal quotations and citations omitted).5

We have recognized that a plaintiff may offer circumstantial proof of intentional discrimination on the basis of age in the form of a supervisor's statement relating to formal or informal managerial attitudes held by corporate executives. See, e.g., Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 333 (3d Cir. 1995); Lockhart v. Westinghouse Credit Corp., 879 F.2d 43, 54 (3d Cir. 1989). We have noted that it is often crucial to the jury's assessment of whether the employer's reasons were pretextual and the ultimate question whether the employer intentionally discriminated against an employee. Antol v. Perry, 82 F.3d 1291, 1302 (3d Cir. 1996). Its importance seems to become ever more critical as sophisticated discriminators render their actions increasingly more subtle to circumvent adverse judicial precedent. See Sheridan, 100 F.3d at 1071; Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1081-82 (3d Cir. 1996).

In resolving whether these comments were properly admitted, we can take guidance from our decisions in

_____

5. We decline Westinghouse's invitation to exercise plenary review of this issue on the basis that the district court failed to make explicit its Rule 403 balancing analysis.

Our review of the record indicates that Westinghouse raised its Rule 403 objection in its pre-trial pleading entitled,"Defendant's Opposition to Plaintiff's Second Supplemental Pretrial Statement and Offer of `Chairman's Initiative' Exhibit." Supp. App. at 1341, 1348-49. The basis for the objection was that the comments were not probative because they

post-dated the termination by approximately one year and did not suggest a corporate culture aimed at eliminating older workers. The comments were highly prejudicial because they would sway the jury's focus from events at the time of Ryder's termination and invite the jury to react irrationally given the negative public opinion of corporate reorganizations.

Although not expressly citing Rule 403, the district court addressed both concerns in ruling on the admissibility of the memorandum. App. at 131-34, 467. Based on our review of the record, we think that the district judge's analysis was sufficiently explicit here. See In re Paoli R.R. Yard PCB Litig., 113 F.3d 444, 457 n.8 (3d Cir. 1997); Sheridan, 100 F.3d at 1076 n.10.

Lockhart, 879 F.2d at 54, and Brewer, 72 F.3d at 333-34. In Lockhart, we held that an ageist comment made by the senior-most executive of one of the four Westinghouse Credit Corporation divisions was relevant to the company's atmosphere or culture when the plaintiff was terminated approximately one year earlier. 879 F.2d at 54. Even though this executive did not occupy his post at the time of the plaintiff 's termination and did not comment specifically about and was not involved in dismissing the plaintiff, we reasoned that a jury could read his comment as reflecting a "cumulative statement of managerial policies" that had been effectuated by other high ranking company executives for "a considerable time." Id. We concluded that an executive of such stature in the organization was likely to be aware of the prevailing atmosphere even if he did not participate in a particular termination.

In Brewer, we confronted the admissibility of Quaker State's CEO's description in a company newsletter of two new executives as "two of our star young men in their mid-40s. That age group is our future." 72 F.3d at 333. We held that this comment was a "stray remark" because the CEO played no role in the termination decision at issue and he made the remark nearly two years prior to the plaintiff's termination. Id. Nonetheless, we found it relevant as probative of informal managerial attitudes. This was particularly so because the remark was written by the CEO, and thus, was "not an off-hand comment made by a low-level supervisor." Id. at 334. We concluded that the question whether the comment was entitled to any-- and how much -- weight as circumstantial evidence of discrimination was for the factfinder.

This is not to say that an ageist statement made by any corporate executive is relevant as evidence of "corporate

culture," which would circumstantially prove a discriminatory animus. Rather, the court must, as we did in Lockhart and Brewer, evaluate factors pertaining to the declarant's involvement in recognizing a formal or informal managerial attitude, including the declarant's position in the corporate hierarchy, the purpose and content of the statement, and the temporal connection between the statement and the challenged employment action.

In the case at bar, none of the comments contained in the memorandum relate directly to Facchini's decision to terminate Ryder. They were made approximately one year after the fact by individuals not involved in the decision. Neither of the foregoing facts renders the comments irrelevant, however. The comments were made by either the company CEO or by executives with authority to render personnel decisions. Moreover, the comments were made in reflection on past managerial viewpoints at Westinghouse with an eye toward future change. If the jury were to believe that these comments accurately reflected a then existing managerial attitude toward older workers in April 1993, this evidence would make the existence of an improper motive for Ryder's termination more probable. Fed. R. Evid. 401; Brewer, 72 F.3d at 333-34; Abrams, 50 F.3d at 1214-15; Lockhart, 879 F.2d at 54. See also Walden v. Georgia-Pacific Corp., No. 96-7045, slip op. at 23-25 (3d Cir. Sep. 26, 1997) ("stray remarks" made by individuals outside the employer's decision-making process may nevertheless constitute admissible evidence of managerial atmosphere and a possible discriminatory intent).

The remaining question, then, is whether the district court acted arbitrarily and irrationally in concluding that the relevancy of these comments is not substantially outweighed by the dangers of unfair prejudice or misleading the jury, given the statements' temporal remoteness and the fact that the speakers were not involved in Ryder's termination. Certainly, their relevancy is somewhat diminished by the fact that they were not made by the individuals who terminated Ryder. Cf. Abrams, 50 F.3d at 1215 (negative comments by a decision maker are often the strongest circumstantial evidence of discrimination). Their relevancy is conversely enhanced by the fact that many of the statements (and seemingly the more controversial ones) were made by the CEO himself. Brewer, 72 F.3d at 333-34.

In this regard, we agree with Westinghouse that a CEO's comments are likely to be reviewed carefully by a jury; as noted in Lockhart, "[w]hen a major company executive speaks, `everybody listens' in the corporate hierarchy...."

879 F.2d at 54. Although he spoke approximately one year after Facchini decided to terminate Ryder, Jordan had

served as CEO since July 1993, approximately one month before Ryder left Westinghouse. He had a basis for knowledge of the existing managerial viewpoints during the relevant time period. As to the other participants, it is clear that they were discussing past practices at Westinghouse.

In any event, we conclude, as we did in Lockhart, that these statements may have reflected a cumulative managerial attitude that had been held for "a considerable time." 879 F.2d at 54. Therefore, we cannot say that the district court acted arbitrarily and irrationally in its finding that any unfair prejudice did not outweigh the relevancy of the comments based on their temporal remoteness or on the fact that the speakers were not involved in Ryder's termination.6

We also believe that the jury would not have been confused by the fact that these comments were made one year after Ryder's termination. They were expressly offered to illustrate the pervasive ageist managerial attitude when Ryder was terminated, and Westinghouse clarified this temporal factor on cross examination. Consequently, we conclude that the district court did not act arbitrarily and irrationally in balancing these competing interests in favor of admissibility.

We also reject Westinghouse's argument that these statements constitute inadmissible hearsay. Ryder offered these statements into evidence as circumstantial proof of the managerial viewpoint on "blockers" that prevailed when Ryder was terminated. Thus, we find that the statements were not offered to prove the truth of the matters asserted.7

_____

6. We think likewise as to any prejudice resulting from the allegedly negative public perception of corporate reorganizations. Such a generalized view is too speculative to support the conclusion that the introduction of a document that Westinghouse contends in its brief evinces no age animus was unfairly prejudicial because it would cause the jury to act irrationally.

7. For instance, Jordan's statement that "[a]n eager, high energy person will get more done in one month than someone who has retired in place will do in one year" was not offered for its truth. Instead, it was offered
to illustrate the CEO's state of mind on the issue of unproductive (and seemingly older) individuals. Fed. R. Evid. 801(c); see also id. 803(3).

This reasoning applies to the other comments as well.

Even if the statements were offered to prove the truth of the matters asserted, we nevertheless would conclude that they were admissible as exceptions to the definition of hearsay. First, the statements made by Jordan at the meeting and summarized in the memorandum were admissions by the agent of Westinghouse. Fed. R. Evid. 801(d)(2)(D). Jordan was speaking as the CEO of Westinghouse to a group of Westinghouse executives about personnel matters over which these executives exercised authority. Thus, he spoke as Westinghouse's agent within the scope of his employment. Carden v. Westinghouse Elec. Corp., 850 F.2d 996, 1001-02 & n.6 (3d Cir. 1988).

Jordan's summarization of the statements made by the unidentified participants presents a "double hearsay" problem. For these comments to have been properly admitted then, we must find each level of hearsay to fall within some applicable exception. Fed. R. Evid. 805. As we noted above, in summarizing these statements in a memorandum sent to all meeting attendees, Jordan acted within the scope of his employment as CEO of Westinghouse. Thus, his recitation of the statements is an admission by a party-opponent under Federal Rule of Evidence 801(d)(2)(D). See Carden, 850 F.2d at 1001-02 & n.6.

We find this exception to apply to the actual utterances of these statements by the unidentified meeting participants as well. The speakers, though unidentified by name or specific title, were all Westinghouse executives who had authority to make personnel decisions. They acted within the scope of their employment in stating their views on the state of their workforce at the request of the company CEO. Thus, the sources of the statements are identified sufficiently to establish that they were made by agents of Westinghouse acting within the scope of and during the existence of their employment relationship. See Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1373 (3d Cir. 1992).[8] Based on the foregoing

_____

8. As to this level of hearsay, we find our decision in Carden to be distinguishable. There, we held that a supervisor's statement to his employee, who was terminated pursuant to a reduction in force, that

analysis, the comments contained in the memorandum were properly admitted.

II.

The Jury Instructions

A.

Westinghouse next challenges the correctness of the following jury instruction:

> In this area of the law, an explanation offered by an employer for its treatment of an employee that is not its real reason for such treatment is referred to as a pretext for illegal discrimination.

App. at 1235. Ryder first responds by asserting that Westinghouse failed to preserve, and therefore has waived, its objection to the jury instructions.

If a timely objection preserved the issue for appeal, we exercise plenary review to determine if the jury instructions, as a whole, stated the correct legal standard. Otherwise, we may exercise our discretion to reverse the judgment only for plain error contained in the instructions. Seman v. Coplay Cement Co., 26 F.3d 428, 435 (3d Cir. 1994).

Federal Rule of Civil Procedure 51 provides, in pertinent part:

> No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds for the objection.

_____

"they wanted a younger person" constituted inadmissible double hearsay. 850 F.2d at 1002. At the heart of our conclusion there was the fact that "they" were not identified anywhere in the record. Thus, we were unable to determine if "they" acted within the scope of their employment in making the statement at issue. Id.; see also United States v. Cruz, 910 F.2d 1072, 1081 n.10 (3d Cir. 1990).

12

Fed. R. Civ. P. 51 (emphasis added). We have interpreted this rule explicitly to require that any objections to the jury charge be made at the close of the charge. Seman, 26 F.3d

at 436. It is clear from the record that while it objected to a separate portion of the court's instruction after the jury was charged, Westinghouse did not object to the sentence attacked on appeal. App. at 1244-45.9

We find inapplicable the exception to Rule 51 that no objection at the close of the charge is needed where the

_____

9. Rule 51 also requires that a party identify the objectionable matter "with sufficient clarity to give the trial judge notice of a possible error in
the instruction." Chemical Leaman Tank Lines, Inc. v. Aenta Cas. & Sur. Co., 89 F.3d 976, 993 (3d Cir.), cert. denied sub nom., Jackson v. Chemical Leaman Tank Lines, Inc., 117 S. Ct. 485 (1996).

Our independent review of the record here shows that Westinghouse never objected specifically to the instruction challenged on appeal. At the
charge conference, Westinghouse objected to the inferential proof instruction, which read:

        You may infer that Mr. Ryder has met his burden of proof if you find
        that the four facts set forth above have been proven by a
        preponderance of the evidence and if you further disbelieve
        defendant's explanation for why plaintiff's employment was
        terminated.

App. at 1234-35. On appeal, Westinghouse identifies as the erroneous instruction a sentence found in the paragraph immediately succeeding the instruction attacked at the charge conference:

        In this area of the law, an explanation offered by an employer for its
        treatment of an employee that is not its real reason for such
        treatment is referred to as a pretext for illegal discrimination.

App. at 1235 (emphasis added).

We conclude that Westinghouse's objection at the conference would not have alerted the district judge to the alleged error advanced on appeal. The former objection pertained to whether the inferential proof instruction would mislead the jury into believing that a finding of discrimination could be based solely on the prima facie case, in contravention of our holding in Seman, 26 F.3d at 435. Westinghouse contends that the instruction now challenged equated the disbelief of Westinghouse's reason with a finding that the reason was a pretext for discrimination, in contravention of the holding in St. Mary's Honor Center v. Hicks, 509 U.S. 502, 511 (1993).

13

district court expressly permits the parties "to incorporate by reference objections made during the charge conference." Seman, 26 F.3d at 436. Westinghouse argues that the district judge granted such express permission toward the end of the charge conference, in responding to Westinghouse's objection to the use of the word "performance" on page eight of the proposed instructions. The court stated that "[a]ll those are noted.. . . And they are preserved every time it is done." App. at 1224.

Our review of this colloquy in context, however, leads us to conclude that the judge was not granting the parties express permission to dispense with objections to the final, altered version of the jury instructions that were actually given to the jury. First, the reference to "performance" can be traced to an earlier Westinghouse objection, on pages six and seven, to the inclusion of "performance" in the instructions as "add[ing] an element to the case that really isn't in the case." App. at 1215. When Westinghouse objected to its inclusion again on page eight, the judge responded by noting that the issue was preserved. Second, Westinghouse's claim is belied by the district judge's invitation and acceptance of Westinghouse's objections after the charge was given. Id. at 1243-44.

Having concluded that Westinghouse did not preserve its objection to the jury instruction that it claims is erroneous, we will review the instruction only for plain error. Chemical Leaman Tank Lines, 89 F.3d at 993; Seman, 26 F.3d at 435. We will reverse and remand for a new trial only if the alleged error is fundamental and highly prejudicial, such that the instructions failed to provide the jury with adequate guidance and our refusal to consider the issue would result in a miscarriage of justice. Brereda v. Pickering Creek Indus. Park, Inc., 865 F.2d 49, 53 (3d Cir. 1989).

B.

It is helpful to review briefly the evidentiary framework that applies in age discrimination cases based on a "pretext" theory. The plaintiff first must establish, by a preponderance of the evidence, a prima facie case of age discrimination by proving that he: (1) is over forty years of

14

age; (2) is qualified for the position in question; (3) suffered an adverse employment action; and (4) was replaced by a sufficiently younger person to permit an inference of age discrimination. Brewer v. Quaker State Refining Corp., 72 F.3d 326, 330 (3d Cir. 1995).

The defendant then must rebut this presumption by articulating a legitimate, nondiscriminatory reason for the adverse employment action. Hicks, 509 U.S. at 506-07 (1993); Brewer, 72 F.3d at 330. Finally, the plaintiff must satisfy his ultimate burden of proving, by a preponderance of the evidence, that the defendant's proffered reason is not the "true reason" for the decision, but instead is merely a pretext for age discrimination. Hicks, 509 U.S. at 511; Bray v. Marriott Hotels, 110 F.3d 986, 990 (3d Cir. 1997).

The plaintiff can meet this ultimate burden by proving, by circumstantial evidence, that the defendant's reason is "unworthy of credence." Armbruster v. Unisys Corp, 32 F.3d 768, 783 (3d Cir. 1994).10 To establish such circumstantial proof, the plaintiff first must present evidence that each of the defendant's reasons is pretextual, viz, each reason was "a post hoc fabrication or otherwise did not actually motivate the employment action." Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994). This proof of pretext then may be combined by the factfinder with the evidence used to support the plaintiff's prima facie case of age discrimination, and from this union, the factfinder may reasonably infer that the defendant discriminated against the plaintiff because of his age. Hicks, 509 U.S. at 511.11

Westinghouse contends that the district court instruction as to the final portion of the required proof was legally

_____

10. The plaintiff also may prove, by direct evidence, that a discriminatory
reason more likely than not motivated the defendant, Armbruster 32 F.3d at 782-83, or that age played a role in and had a determinative effect on the outcome of the defendant's decisionmaking process. Miller v. CIGNA Corp., 47 F.3d 586, 588 (3d Cir. 1995) (en banc).

11. Of course, such an inference is by no means compelled as a matter of law. Hicks, 509 U.S. at 511. We have stated that the factfinder in a pretext case "is not limited to a choice betweenfinding that the alleged discriminatory motive or the employer's nondiscriminatory explanation was the sole cause of the employment action." Miller, 47 F.3d at 596.

erroneous. In its proper context, the pertinent portion of the instruction reads:

> You may infer that Mr. Ryder has met his burden of
> proof if you find that the four facts set forth above have
> been proven by a preponderance of the evidence and --
> note that I say "and" -- if you further disbelieve

defendant's explanation for why plaintiff's employment was terminated.

. . . . If you find that Westinghouse articulated legitimate, nondiscriminatory reasons for eliminating plaintiffs [sic] job, then you must determine whether the plaintiff, John Ryder, has proven by a preponderance of evidence that the reason or explanation given by the defendant was not the real or true reason behind Westinghouse's action in terminating Mr. Ryder's employment.

In this area of the law, an explanation offered by an employer for its treatment of an employee that is not its real reason for such treatment is referred to as a pretext for illegal discrimination. If you find that Mr. Ryder has proven by a preponderance of the evidence that the defendant, Westinghouse Electric Corporation, used the elimination of plaintiff's job as an excuse or pretext for discriminating against him on the basis of his age, then your verdict will be for Mr. Ryder, the plaintiff.

On the other hand, if you find that the explanation offered by Westinghouse Electric Corporation . . . were [sic] legitimate reasons for plaintiff's termination, and that plaintiff has not proven by a preponderance of evidence that age was a determining factor in the termination of his employment, then your verdict will be for the defendant, Westinghouse Electric Corporation.

In making this determination, you should be aware of the following: The burden of proving discrimination always remains with the plaintiff, John Ryder, to prove that he was a victim of age discrimination. . . . Your job is to determine whether Westinghouse discriminated against Mr. Ryder on the basis of his age.

16

App. at 1235-36 (emphasis added).

Westinghouse asserts that this highlighted sentence equated any disbelief of its proffered reasons with the finding that the reasons were necessarily pretexts for age discrimination. Westinghouse states that the jury should have been instructed that under Hicks, a jury may infer the ultimate fact of discrimination from its disbelief of the employer's reason and its belief of the evidence used to establish a prima facie case, but the jury is not required to do so.12

We agree that this statement was erroneous. We have stated that the factfinder in a pretext case is free to accept either or neither of the parties litigating positions as reflecting the whole truth. Miller, 47 F.3d at 597. That is why in Miller, we held that it was reversible error for the court to instruct the jury repeatedly that it had tofind that age was the "sole cause" of the adverse employment action for the plaintiff to prevail on his ADEA claim. Id. In the case at bar, the jury may have believed that Westinghouse's reasons were pretextual, without necessarily believing that age discrimination was the real reason.

Despite this isolated error, we must read the jury instructions as a whole. Lockhart v. Westinghouse Credit Corp., 879 F.2d 43, 56 n.13 (3d Cir. 1989). Much like the case presented in Lockhart, we find this solitary misstatement of the law to be offset by the court's repeated correct explanation of Ryder's burden of proof.

For instance, in the sentence immediately following the erroneous sentence, the court clearly instructed that a verdict for Ryder was proper if the jury found that Westinghouse used the elimination of his job "as an excuse or pretext for discriminating against him on the basis of his age." App. at 1235.13 Then, in the next paragraph, the court instructed the jury that if it believed Westinghouse's reasons and concluded that Ryder did not prove that "age

_____

12. We note that Westinghouse requested no such instruction in its proposed jury instructions.

13. This is nearly the exact language that Westinghouse requested the court to use. App. at 83-84.

was a determining factor in the termination of his employment," then its verdict would be for Westinghouse. Id. at 1235-36. Finally, the court again admonished the jury that "you should be aware of the following: The burden of proving discrimination always remains with [Ryder] to prove that he was the victim of age discrimination." Id. at 1236.

Based on our review of the instructions, we conclude that the multiplicity of correct statements negates the effect of the solitary erroneous utterance. Thus, we find that the court's instructions, as a whole, provided the jury with adequate guidance on the parties' respective evidentiary burdens, and we perceive of no miscarriage of justice that could have resulted.

Conclusion

For the foregoing reasons, we will affirm the order of the district court entering judgment for Ryder on the jury's verdict in his favor.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

18