

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-19-2005

# Brooks v. Summit

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-4023

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Brooks v. Summit" (2005). *2005 Decisions.* Paper 1158.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1158

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-4023

CATHLENE K. BROOKS,
Appellant

v.

THE CITY OF SUMMIT; THE POLICE DEPARTMENT OF THE CITY
OF SUMMIT; WILLIAM SCHNELLER, Individually and as
POLICE CHIEF OF THE SUMMIT POLICE DEPARTMENT;
PETER FRANK, POLICE OFFICER, Individually and as
a POLICE OFFICER OF THE CITY OF SUMMIT; MICHAEL RABASCA,
POLICE OFFICER, individually and as POLICE OFFICER OF THE
CITY OF SUMMIT; MATTHEW L. DUNLEAVY, DETECTIVE,
Individually and as a DETECTIVE OF THE CITY OF SUMMIT;
JOHN DOES I-X; MARY MOES I-X, FICTICIOUS INDIVIDUALS,
Individually and as a POLICE OFFICER OF THE CITY OF SUMMIT

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
D.C. Civil No. 00-cv-05379
District Judge:  The Honorable William H. Walls

Submitted Under Third Circuit LAR 34.1(a)
February 7, 2005

Before: BARRY, FUENTES, and BECKER, <u>Circuit Judges</u>

(Opinion Filed: May 19, 2005)

BARRY, Circuit Judge

Following an eight-day jury trial, a verdict in favor of the sole remaining defendant was returned. Cathlene Brooks ("Brooks"), appellant herein, argues that the verdict was against the weight of the evidence, that certain jury instructions should have been given and others were confusing, and that certain other rulings of the District Court were wrong. We will affirm.

## I. BACKGROUND

The parties are familiar with the facts, and we only briefly touch on them. We note, in this connection, that we view those facts, and inferences therefrom, in the light most favorable to the verdict winner.

On the evening of September 25, 1998, Officer Peter Frank ("Frank") received a call from his dispatcher regarding a noise complaint in the vicinity of a restaurant on Park Avenue in Summit, New Jersey. As Frank pulled up and parked his patrol car, he saw a woman surrounded by a number of men. When he approached the group, the men fled. Frank recognized the woman, who subsequently identified herself as Ms. Brooks, from other encounters, one of which was based on a complaint by a resident of a building on Orchard Street; indeed, Frank had been told by another resident on that occasion that Brooks had been giving oral sex to "quite a few of the gentlemen" who lived at the

Orchard Street address.  5T at 107.[1]  Brooks, Frank testified, was known to him as a "possible prostitute who caters to the Hispanic community."  *Id.*; 6T at 14, 18.

Frank asked Brooks some routine questions, such as where she resided and where she worked.  She gave three different locations as her residence and contradictory answers to certain other questions.  Brooks "seemed to be sluggish, slurring her answers, her eyes were droopy."  5T at 78.  Frank did not smell alcohol, but believed that Brooks was likely under the influence of narcotics.

When Frank asked her for identification, Brooks told him that it was in her car, and they walked to the car, which was parked approximately fifty feet away.  As Brooks was retrieving her identification, Frank saw, through the front windshield, in plain view on the dashboard, a prescription bottle filled with white pills with the name of Theresa Machette on it.  Frank then looked through another window of the car using his flashlight, and saw a "sandwich baggy on the driver's side floor with an over pinkish orangish tablet, peach color possibly called Xanax." *Id.* at 88.  Frank opened the door and took the Xanax.

It appeared to Frank that, aside from the drugs he had found, there were many more bags of drugs in the car, and the subsequent inventory search proved him correct.  The car was, as even Brooks conceded, filled "to the max" with 30 gallon garbage bags, themselves filled with prescription drugs; "[e]very possible nook and cranny was full."  3T

---

[1]We will cite to the transcript using the form appellees have used.  *See* Appellees' Br. at viii.  We note, however, that appellees have failed to list the transcript of June 20, 2003 in the Table of Transcripts.  We will refer to that volume as "10T."

at 53.  It was, as the District Court and all counsel later concurred, a "pharmaceutical warehouse," a "mobile CVS."  9T at 20.  Brooks was arrested and charged with possession of Diazepam without a valid prescription.  She was held overnight and then released on bail.

Brooks filed suit alleging various constitutional violations and state tort claims.  As noted above, a jury trial ensued, with a verdict in favor of Frank, the sole remaining defendant.  Brooks appealed.  The District Court had jurisdiction under 28 U.S.C. § 1331.  We have jurisdiction under 28 U.S.C. § 1291.

## II.  <u>DISCUSSION</u>

Appellees correctly note that, sufficiency of the evidence aside – and the evidence was clearly sufficient – what it appears that Brooks is primarily arguing is the failure of the District Court to take the jury, in its instructions and by means of questions in the verdict sheet, step by step – indeed, inch by inch – through the events of the evening of September 25, 1998.  Thus, the argument goes, the jury should have been separately instructed on probable cause to stop, probable cause to enter, probable cause to search, and probable cause to arrest.  Appellees respond that there was no necessity for any such exercise because, the stop aside, the issue, simply stated, was whether drugs were in plain view in the interior of the car and were seen by Frank, thus providing him with probable cause to enter the car, seize those drugs, and arrest Brooks.  We agree.

Where a challenge is made to jury instructions, we examine whether those

instructions, taken as a whole and viewed in light of the evidence, fairly and adequately submitted the issues in the case to the jury. *Citizens Fin. Group, Inc. v. Citizens Nat'l. Bank of Evans City*, 383 F.3d 110, 133 (3d Cir. 2004). The jury instructions here fairly and adequately submitted the relevant issues, most particularly probable cause and the plain view doctrine, to the jury. Indeed, the District Court reinstructed on plain view not once but twice and reinstructed, as well, on probable cause. Those issues, of course, were the heart of the case.

Nonetheless, Brooks complained that the instructions and the verdict sheet paid insufficient attention to the various components leading to the arrest. For example, over and over again, the argument was made that there was a distinction between probable cause to enter the car and probable cause to arrest and, thus, that there should be separate instructions given as to each. The District Court found that, given the facts of this case, no such division was required here. The only search at issue was the search that preceded the arrest, and the jury was properly instructed that that search was lawful if the drugs were in plain view and, thus, the entry permissible. The jury was also properly instructed that before Frank could arrest Brooks, he had to have had probable cause to search the car.

Brooks also contends that the jury should have been instructed to find that the reasonable suspicion necessary to detain and interrogate her prior to the search – the "*Terry* stop," if such it be – required a separate analysis from the probable cause

necessary to enter her car without a warrant or her consent.  She complains, as well, of the verdict sheet's silence in this regard.

But Brooks was silent in this regard.  "A party who objects to an instruction or failure to give an instruction must do so on the record, stating distinctly the matter objected to and the grounds of the objection." Fed.R.Civ.P. 51(c)(1); *see also Ryder v. Westinghouse Elec. Corp.*, 128 F.3d 128, 135 (3d Cir. 1997) ("We have interpreted this rule explicitly to require that any objections to the jury charge be made at the close of the charge.").  Where a party fails to object, we review the propriety of the jury instructions for plain error.  *See Fashauer v. New Jersey Transit Rail Operations*, 57 F.3d 1269, 1288-89 (3d Cir. 1995).  That is, we will only reverse where the error is "fundamental and highly prejudicial or if the instructions are such that the jury is without adequate guidance on a fundamental question and . . . failure to consider the error would result in a miscarriage of justice." *Alexander v. Riga*, 208 F.3d 419, 426-27 (3d Cir. 2000).

Even if it would have been appropriate to instruct on the purported *Terry* stop, and we do not suggest that that is so, the evidence overwhelmingly supported a reasonable suspicion to stop and any failure to instruct the jury in that regard surely did not result in a miscarriage of justice.

Finally, we reject Brooks' argument that the District Court erred when it denied her motion for a new trial.  A new trial may be granted "only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record,

cries out to be overturned or shocks our conscience." *Greenleaf v. Garlock*, 174 F.3d 352, 366 (3d Cir. 1999) (internal quotations omitted).

Brooks maintains that the jury verdict was against the "weight of credible evidence" proffered at trial in support of her claims, and that "manifest injustice can only be avoided by reversing the verdict." App. Br. at 55. She reaches these conclusions because a "member of the jury acknowledged that the decision was 'tough'" and some of her evidence contradicted Frank's testimony. *Id.* at 55-56.

This case does not come close to crying out to be overturned or shocking our conscience. Aside from the fact that much of the evidence was undisputed, the jury heard two different versions of certain of the events leading up to the arrest, and clearly found the defense witnesses more credible. As the District Court put it, "If [the jury] believe[s] Frank, that's it." Defense counsel responded, "It's over." 10T at 96.

### III. CONCLUSION

For the foregoing reasons, we will affirm the orders of July 7, 2003 and September 29, 2003.[2]

---

[2]Brooks also raises an issue addressed to a complaint-summons and a challenge to the District Court's grant of a motion under Fed.R.Civ.P. 50(a)(1) to defendants Dunleavy and Rabasca. We reject these issues without further discussion.