NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1085
_____

DOUGLAS M. HODCZAK; JAMES M. CROSSAN;
THOMAS J. MAGDIC; and JOSEPH A. LITVIK,
on behalf of themselves and all others similarly situated,

                Appellants

v.

LATROBE SPECIALTY STEEL COMPANY
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-08-cv-00649)
District Judge:  Honorable Terrence F. McVerry
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 25, 2011

Before:  FISHER, VANASKIE and ROTH, *Circuit Judges*.

(Filed: November 17, 2011)
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

Douglas Hodczak, James Crossan, Thomas Magdic, and Joseph Litvik

(collectively, "Appellants") appeal from an order of the District Court granting Latrobe

Specialty Steel Company's ("LSS") motion for summary judgment. For the reasons stated below, we will affirm.

I.

We write exclusively for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

Appellants were all hired by one of LSS's predecessors, Latrobe Steel Company, between 1969 and 1979. In 2006, Watermill Group and Hicks Holdings acquired the company and renamed it Latrobe Specialty Steel. At the time of the acquisition, Appellants initially chose to retire, but were subsequently offered and accepted employment with LSS.

In October 2007, during the course of an investigation into a sexual harassment complaint against Magdic, LSS discovered that Appellants, as well as two other employees, Thomas Everett and David Conrad, regularly exchanged emails containing sexually explicit photographs. LSS's Electronic Communications Policy ("EC Policy") expressly prohibits employees from sending such materials. As such, LSS executives decided to preliminarily suspend all six employees pending further inquiry. In deciding the appropriate level of discipline for each employee, LSS considered the nature and volume of the emails exchanged, whether they were sent to individuals inside or outside the company, and whether they were sent to customers or vendors. Approximately one

2

week after they were suspended, Appellants were informed that their employment was being terminated. Neither Everett nor Conrad was terminated. At the time they were fired, Appellants were all in their late fifties or early sixties.

Appellants subsequently filed suit in the U.S. District Court for the Western District of Pennsylvania, alleging that LSS discriminated against them because of their age, in violation of the Age Discrimination in Employment Act ("ADEA"), 20 U.S.C. §§ 621 *et seq.* On December 29, 2010, the District Court granted summary judgment in favor of LSS, concluding that Appellants had failed to demonstrate that "but for" their ages, LSS would not have terminated their employment.

## II.

The District Court had jurisdiction under 28 U.S.C. § 1331. We exercise appellate jurisdiction pursuant to 28 U.S.C. § 1291. We review the District Court's grant of summary judgment de novo, and apply "the same standard that guides our district courts." *Dee v. Borough of Dunmore*, 549 F.3d 225, 229 (3d Cir. 2008) (citation omitted). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* (citing Fed. R. Civ. P. 56(c)).

## III.

We must analyze Appellants' ADEA claims under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Keller v. Orix*

3

*Credit Alliance, Inc.*, 130 F.3d 1101, 1108 (3d Cir. 1997). Under *McDonnell Douglas*, the plaintiff bears the burden of establishing a prima facie case of discrimination under the ADEA. *Smith v. City of Allentown*, 589 F.3d 684, 689 (3d Cir. 2009). This requires proof that: (1) the plaintiff was a member of the protected age class; (2) he suffered an adverse employment decision; (3) he was qualified to hold the position; and (4) he was replaced by a significantly younger employee. *Id.* With the exception of Hodczak, LSS concedes that Appellants have established a prima facie case of discrimination. If the plaintiff meets this burden, "the burden of production shifts to the employer to identify a legitimate non-discriminatory reason for the adverse employment action." *Id.* at 690 (citation omitted). Here, LSS asserts that its decision to terminate Appellants' employment was based on their violation of the EC Policy. Because this justification is not discriminatory on its face, the burden of production shifts back to Appellants "to demonstrate that the employer's proffered rationale was a pretext for age discrimination." *Id.* (citation omitted). "Throughout this burden-shifting exercise, the burden of persuasion, including the burden of proving but for causation . . . remains on the employee." *Id.* at 691 (internal marks and citations omitted).

A plaintiff can show that the employer's proffered justification was pretextual, and thus that age discrimination was the but-for cause of the adverse employment decision, by establishing that the employer "previously discriminated against her, that the employer has discriminated against other persons within the plaintiff's protected class or within

4

another protected class, or that the employer has treated more favorably similarly situated persons not within the protected class." *Simpson v. Kay Jewelers,* 142 F.3d 639, 645 (3d Cir. 1998) (citing *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994)). In conducting our inquiry, we do not look at each incident in isolation; rather, we examine the "overall [employment] scenario." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1083 (3d Cir. 1996) (citation omitted). In this case, when we view the evidence in the light most favorable to Appellants, we do not believe that a reasonable jury could find that Appellants would not have been fired but for their ages. Given the conduct in which Appellants engaged and the lack of sufficient evidence suggesting an atmosphere of age discrimination at LSS, there is no basis for a finding that LSS's proffered rationale was a pretext for age discrimination. *See Simpson*, 142 F.3d at 645.

Appellants first contend that they are able to demonstrate pretext because LSS discriminated against them in the past. They allege that the following incidents are representative of a corporate culture of age bias at LSS: (1) after asking Magdic if he was ready to retire, LSS's CEO Hans Sack said, "it looks like you are ready to retire. You have gray hair and are fat"; (2) Crossan was transferred to a different position because LSS wanted "new blood" in the department; (3) at a 2007 management meeting, Sack mentioned the need to recruit a "younger workforce"; (4) older supervisors sat at one end of the table during meetings and were routinely interrupted when they tried to

5

speak while Dan Hennessy, LSS's Vice President of Manufacturing, welcomed the advice of younger employees.

When considering whether remarks are probative of discrimination, we consider the speaker's position in the organization, the content and purpose of the statement, and the "temporal connection between the statement and the challenged employment action." *Ryder v. Westinghouse Elec. Corp.*, 128 F.3d 128, 133 (3d Cir. 1997). Here, although several of the statements were made by LSS executives, they were temporally remote from the decision to discharge Appellants, and completely unrelated to the investigation regarding Appellants' violation of the EC Policy. Thus, the comments qualify as "stray remarks" and are entitled to minimal weight. *See Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 545 (3d Cir. 1992). Appellants' argument regarding seating at meetings rings hollow because, as they admit, they chose their seats. Moreover, the fact that LSS decided to look outside the company to fill a vacancy, rather than promote from within, is not evidence of age discrimination. *See Keller*, 130 F.3d at 1108-09 ("The question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is discrimination." (internal marks and citation omitted)). We thus agree with the District Court that Appellants' proffered evidence of LSS's past discrimination lacks serious probative value.

We similarly concur with the District Court's assessment of the comparator evidence offered by Appellants. It is well established that a plaintiff alleging

6

employment discrimination may establish pretext by showing "that the employer treated other, similarly situated persons not of his protected class more favorably." *Fuentes*, 32 F.3d at 765. Here, however, the persons identified by Appellants are not similarly situated. Carl Dorsch is not similarly situated to Appellants because, although he accessed pornographic websites on his work computer, he was a non-supervisory employee and he did not send the content to anyone else. Likewise, Robert Smith is not similarly situated to Appellants because there is no evidence that Smith actually sent sexually explicit emails. Finally, although he was also suspended for violating the EC Policy, Conrad is not similarly situated to Appellants because he sent only one email and did so from his personal computer. In contrast, Appellants exchanged sexually explicit emails on nearly a daily basis. Thus, the fact that these employees, who were all younger than Appellants, were not immediately fired, does not establish pretext. It is also worth noting that Everett, who was older than Appellants, violated the EC Policy, but his employment was not terminated.

We do not find any of Appellants' other arguments persuasive. The fact that the EC Policy was not in effect when some of the emails were sent is irrelevant; Appellants cannot seriously contend that they thought it was acceptable to send sexually explicit emails simply because there was no policy expressly prohibiting it. Furthermore, there is no evidence in the record to support Appellants' contention that LSS's investigation of the sexual harassment complaint against Magdic was a "sham." Appellants also offer the

7

misleading argument that sending sexually explicit emails was so commonplace at LSS that it could not have been the real reason for their termination. As the District Court explained, although 90 percent of email boxes searched during discovery included an email that contained a keyword search term, most of the emails identified were "false hits." In reality, only a small percentage of the emails searched contained sexually explicit materials. Finally, we reject Appellants' argument that the District Court improperly resolved inconsistencies in the record in favor of LSS. To the extent that inconsistencies actually existed, they were largely immaterial.

## IV.

For the foregoing reasons, we will affirm the order of the District Court.