**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-2757
_____

THERESA A. GALLAGHER,
Appellant

v.

CENTRAL VALLEY SCHOOL DISTRICT
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2:22-cv-01791)
District Judge: Honorable William S. Stickman IV
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
December 1, 2025
_____

Before: CHAGARES, <u>Chief</u> Judge, FREEMAN and MASCOTT, <u>Circuit</u> <u>Judges</u>.

(Filed: March 6, 2026)
_____

OPINION[*]
_____


CHAGARES, <u>Chief</u> Judge.

---

[*] This disposition is not an opinion of the full Court and, pursuant to 3d Cir. I.O.P. 5.7, does not constitute binding precedent.

Theresa Gallagher appeals the District Court's grant of summary judgment to the Central Valley School District ("Central Valley") on her claims of age discrimination under the Age Discrimination in Employment Act ("ADEA") and Pennsylvania Human Relations Act ("PHRA"). For the following reasons, we will affirm.

I.[1]

Gallagher is a 52-year-old woman who began working as a substitute teacher for Central Valley in 2001. Starting in 2013, Gallagher began to indicate to Central Valley Superintendent Nicholas Perry that she was interested in a permanent teaching position. She intermittently reiterated this interest throughout the next eight years.

Central Valley learned that it would need to hire a permanent third-grade teacher at Todd Lane Elementary School in early 2021. Pursuant to section 304.1 of Central Valley's Policies and Procedures, Perry had the discretion to fill this position through either: (1) advertising the open position and conducting a formal application, interview, and teaching demonstration process; or (2) "modify[ing] this process to meet the needs of the district." Appendix ("App.") 665–66. Given the difficulty of conducting teaching demonstrations and interviews during the then-ongoing COVID-19 pandemic, Perry utilized the latter method and approached Christina Feragotti, Todd Lane's principal, to ask her if there were any long-term substitutes at the school who might be a good candidate. Feragotti recommended Casey Reinstadtler — a younger individual — who had been serving as a long-term third-grade substitute teacher at Todd Lane for the past

---

[1] We write primarily for the parties and so recite only the facts necessary to decide the case.

two years.  Perry then recommended Reinstadtler to the Central Valley School Board, which scheduled a vote on whether to hire her.  When Gallagher learned of the upcoming vote, she immediately emailed members of the School Board to express her interest in the position.  Nevertheless, on June 17, 2021, the School Board voted to hire Reinstadtler.

Two months later, on August 5, 2021, Gallagher spoke on the phone with Donna Belcastro, the president of the Central Valley School Board, who disclosed that Perry was never going to hire her because "you are too old, Theresa, he is not going to hire anyone with experience.  He wants young kids that he can push around."  App. 287.  Belcastro further provided Gallagher with an example, explaining that Perry had recently rejected a candidate with 17 years of experience for an open guidance counselor position.  Shortly after that phone call, Perry introduced the newly hired teachers — including Reinstadtler — at a School Board meeting by stating:  "We have 13 new teachers, young fresh faces excited to get into education."  App. 531.

Claiming "extreme humiliation" as a result of these events, Gallagher sought and ultimately obtained a permanent teaching position in another school district.  App. 695.  She subsequently filed suit against Central Valley, alleging age discrimination in violation of the ADEA and PHRA.  The District Court granted summary judgment to Central Valley on both claims, finding that Gallagher had failed to establish that Central Valley's reasons for hiring Reinstadtler were pretextual.  Gallagher timely appealed.

II. [2]

---

[2] The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a) and 1367.  We have jurisdiction pursuant to 28 U.S.C. § 1291.  We review a grant of summary judgment

3

We evaluate plaintiffs' claims of age discrimination under the ADEA and PHRA by following the familiar burden-shifting framework established by the Supreme Court in McDonell Douglas Corp. v. Green, 411 U.S. 792 (1973).[3] See Willis v. UPMC Children's Hosp. of Pittsburgh, 808 F.3d 638, 643–45 (3d Cir. 2015). Because the parties agree that Gallagher has established a prima facie case of age discrimination and Gallagher does not challenge the District Court's finding that Central Valley articulated a legitimate non-discriminatory reason for hiring Reinstadtler, only the third step — pretext — is at issue.

A.

1.

Gallagher first contends that the District Court misapplied the summary judgment standard by analyzing and weighing each proffered instance of pretext individually, rather than considering them as a whole in the light most favorable to her as the nonmoving party.

_____

de novo, applying the same standard that the District Court applied. Viera v. Life Ins. Co. of N. Am., 642 F.3d 407, 413 (3d Cir. 2011). Under that standard, summary judgment is warranted where, upon viewing the facts and drawing all reasonable inferences in the light most favorable to the nonmovant, Hugh v. Butler Cnty. Family YMCA, 418 F.3d 265, 267 (2005), "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

[3] This Court has explained "that the PHRA is to be interpreted as identical to federal anti-discrimination laws except where there is something specifically different in its language requiring that it be treated differently." Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 567 (3d Cir. 2002). Since no such difference is present here, we apply an identical analysis to both Gallagher's ADEA and PHRA claims. See Colwell v. Rite Aid Corp., 602 F.3d 495, 499 n.3 (3d Cir. 2010) (noting that it is "proper to address ADEA and PHRA age discrimination claims collectively" (brackets and quotation marks omitted)).

4

We disagree.  True, we have previously cautioned that in analyzing discrimination claims on summary judgment, courts must "view the facts in the light most favorable to the nonmoving party" and "concentrate not on individual incidents, but on the overall scenario."  Abramson v. William Paterson College of New Jersey, 260 F.3d 265, 276 (3d Cir. 2001) (quotation marks omitted).  But while the District Court may have separated each piece of evidence into its own analytical paragraph, there is no indication that it failed to consider the record as a whole or impermissibly weighed the evidence.  To the contrary, the District Court made clear that it had "carefully examined the record" and the evidence in the light most favorable to Gallagher, but simply found it "insufficient to support a claim of pretext."  App. 15.  We therefore conclude that the District Court did not err by misapplying the summary judgment standard.

2.

Gallagher further argues that the District Court erred by failing to adhere to the standard set forth in Fuentes v. Perskie, 32 F.3d 759 (3d Cir. 1994), in determining whether she had established pretext.  In Fuentes, we explained that to establish pretext, "the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably . . . believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action" — for example, by showing:  (1) "that the employer had in the past subjected him to unlawful discriminatory treatment;" (2) "that the employer had treated other, similarly situated persons not of his protected class more favorably;" or (3) "that the employer had discriminated against other members of his protected class or other protected categories

5

of persons." Id. at 764–65. Gallagher now suggests that the District Court misapplied this standard by refusing to consider evidence matching the second and third examples as well as evidence outside those three scenarios.

Finding Gallagher's proffered evidence insufficient, however, is not the same as misapplying Fuentes. And here, the District Court not only explicitly cited Fuentes and its examples of pretext, but also it walked through each of Gallagher's evidentiary submissions — including those which she now claims it refused to consider — before finding that they simply did not amount to "sufficient evidence from which a factfinder could reasonably conclude that an illegitimate factor more likely than not was a motivating or determinative cause" of Central Valley's failure to hire her. Id. at 765. The District Court correctly applied Fuentes and there is no reason to reverse on this basis.

B.

Gallagher next contends that the District Court improperly disregarded Belcastro's statements about Perry on the phone call after the School Board's vote.[4] We are unpersuaded.

Gallagher first claims that the District Court erred by discounting Belcastro's

---

[4] Gallagher additionally suggests that the District Court erred by finding that these statements were inadmissible hearsay. This is of little consequence, though, because the District Court did not refuse to consider Belcastro's statements on that basis — rather, it simply noted that there were "hearsay problems that would occur at trial should Gallagher seek to testify about this portion of her alleged conversation with Belcastro." App. 16. Such error was therefore harmless. See Goodman v. Pa. Tpk. Comm'n, 293 F.3d 655, 667–68 (3d Cir. 2002).

6

statements as little more than her "personal beliefs" and "speculation." App. 15. According to Gallagher, such statements were proper circumstantial evidence of Central Valley's ageist animus and should have gone to the jury.

Simply saying something, however, does not make it so and Gallagher offers little to support that Belcastro's statements constituted competent evidence of the kind she claims. Rather, as the District Court explained, Belcastro's personal perceptions of Perry's hiring preferences amounted to little more than unsupported conjecture, which cannot reasonably create an inference of pretext sufficient to defeat summary judgment. See Halsey v. Pfeiffer, 750 F.3d 273, 287 (3d Cir. 2014). And while Belcastro may have similarly interpreted Perry's decision not to hire the experienced guidance counselor applicant as indicative of ageist bias, Gallagher offers no evidence that this was the true reason for his refusal. As a result, without more, the District Court did not err by finding that Belcastro's statements were insufficient for a reasonable jury to be able to conclude that "an invidious discriminatory reason was more likely than not a motivating or determinative cause of [Central Valley's] action." Fuentes, 32 F.3d at 764.

Gallagher further suggests that the District Court improperly disregarded Belcastro's comments and Perry's decision not to hire the guidance counselor applicant as "stray remarks," rather than circumstantial evidence of Central Valley's "corporate culture of ageism." See Gallagher Br. 29–31, 35–39. We have previously explained that "[s]tray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight." Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 545 (3d Cir. 1992). But under certain circumstances, such remarks may

7

nevertheless be "probative of informal managerial attitudes." <u>Ryder v. Westinghouse Elec. Corp.</u>, 128 F.3d 128, 132–33 (3d Cir. 1997). To determine whether such statements are admissible as circumstantial evidence of a "corporate culture" of discrimination, we must therefore "evaluate factors pertaining to the declarant's involvement in recognizing a formal or informal managerial attitude, including the declarant's position in the corporate hierarchy, the purpose and content of the statement, and the temporal connection between the statement and the challenged employment action." <u>Id.</u> at 133.

Here, while Perry is a prominent decisionmaker involved in the hiring process at Central Valley, his conversation with Belcastro about the guidance counselor applicant is nevertheless irrelevant to the "corporate culture" because it took place at an unknown time prior to August 5, 2021, and concerned a different position altogether. And while Belcastro is also situated high up in the decisionmaking hierarchy, made the comment to Gallagher shortly after the decision to hire Reinstadtler, and did so to explain why Gallagher was rejected, her remarks are likewise not emblematic of a "corporate culture" of age-based animus. They simply consist of one person's opinion about another decisionmaker — not the culture as a whole. The District Court therefore was correctly unpersuaded by these statements for this additional reason.[5]

C.

Gallagher next challenges the District Court's treatment of Perry's comment

---

[5] Notably, the District Court never characterized Belcastro's statement that Gallagher was "too old" to be hired by Perry as a stray remark — rather, it simply found it too speculative to create a genuine dispute of material fact. App. 15.

characterizing the newly hired teachers as "young, fresh faces excited to get into education" on the same grounds, arguing that the District Court improperly dismissed this statement as a "stray remark" and weighed its probative value instead of recognizing it as indicative of Perry's ageist hiring preferences. App. 531.

These arguments meet the same fate. As an initial matter, while there can be little doubt that Perry was a decisionmaker within the hiring process and occupied a high place in the Central Valley hierarchy, his comment was entirely detached from the hiring process — rather, it was made more than two months later for the sole purpose of introducing the newly hired teachers to the School Board. No reasonable jury would therefore be able to infer from it a systemic hostility towards older applicants which underpinned the decision to hire Reinstadtler instead of Gallagher and the District Court did not err in disregarding it on this basis.[6] See Pivirotto v. Innovative Sys., Inc., 191 F.3d 344, 358–59 (3d Cir. 1999).

We further disagree that the District Court improperly invaded the role of the factfinder by commenting on the probative value of Perry's statement. As previously noted, screening the sufficiency of the evidence is not the same thing as weighing it. And while here the District Court remarked that "[p]raising youth does not indicate bias against more mature workers," App. 17, such comments go less to the persuasive force of Perry's statement and more to whether it raises a genuine issue of material fact for trial. The District Court was therefore well within its bounds, and we see no error in its

---

[6] Indeed, one of the new teachers in the group introduced by Perry was 50 years old.

determination that Perry's off-handed comment — whether alone or in light of the record as a whole — was insufficient for Gallagher to stave off summary judgment.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249–51 (1986).

D.

Gallagher also suggests that the District Court incorrectly concluded that Perry's deviation from the standard application, interview, and teaching demonstration process was insufficient evidence of pretext.  By Gallagher's account, while section 304.1 permits the Superintendent to "exercise discretion to modify this process to meet the needs of the district," Perry did not truly modify the process — he abandoned it to ensure the hiring of a younger candidate.  App. 66.

This argument likewise fails to persuade us.  Contrary to Gallagher's suggestion that Perry "abandoned" section 304.1 by deviating from the standard hiring process, the policy itself broadly authorizes him to do so in whatever way necessary to meet the needs of the district.  Gallagher Br. 45.  And while such departures "might" suggest an invidious purpose, Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 267 (1977), "[t]he specific sequence of events leading up to the challenged decision" is also important, id.  Here, the record indicates that Perry deviated, not for discriminatory reasons, but because Feragotti had already recommended a qualified candidate and hiring her directly would permit Central Valley to avoid the challenges associated with in-person hiring during the then-ongoing pandemic.  While Gallagher now speculates that this was pretextual and that Perry, in fact, sought to hire a younger candidate, she offers no evidence — either direct or circumstantial — to support that interpretation.  We thus

10

see no error in the District Court's conclusion.

## E.

Gallagher finally contends that the District Court erred by weighing the record and concluding that Perry lacked discriminatory animus such that he did not use the School Board as his "cat's paw"[7] to carry out an illegal hiring decision. In her view, the District Court ignored Perry's hostility towards older applicants which, when coupled with his involvement in recommending Reinstadtler and the School Board's ultimate hiring decision, was sufficient evidence of pretext to withstand summary judgment.

This argument also lacks merit. Once again, the District Court did not weigh the evidence — rather, it simply found that the record lacked competent evidence from which a reasonable jury could infer that Perry held discriminatory animus towards older applicants or that the same was the true reason for Reinstadtler's hiring. And there was no error in this determination as each of Gallagher's proffered pieces of evidence — whether alone or in combination — amounted to little more than speculation, personal opinion, or isolated stray remarks. The District Court therefore properly granted summary judgment on this ground.

## III.

For the foregoing reasons, we will affirm the judgment of the District Court.

---

[7] The term "cat's paw" derives from one of Aesop's fables and refers to a situation in which a biased subordinate uses the formal decisionmaker as a patsy to effectuate a discriminatory employment action. Staub v. Proctor Hosp., 562 U.S. 411, 415 n.1, 415–16 (2011).