

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-18-1999

# Cooper Distr Co Inc v. Amana Refrig Inc

Precedential or Non-Precedential:

Docket 98-6400

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

## Recommended Citation

"Cooper Distr Co Inc v. Amana Refrig Inc" (1999). *1999 Decisions.* Paper 157.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/157

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed June 18, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 98-6400

COOPER DISTRIBUTING CO., INC.,
a New Jersey corporation,
        Appellant

v.

AMANA REFRIGERATION, INC.,
a Delaware corporation

On Appeal from the United States District Court
for the District of New Jersey
D.C. Civil Action No. 91-cv-05237
(Honorable Maryanne Trump Barry)

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 23, 1999

Before: SLOVITER, SCIRICA and ALITO, Circuit Judges

(Filed June 18, 1999)

        DONALD A. KLEIN, ESQUIRE
        KENNETH K. LEHN, ESQUIRE
        Winne, Banta, Rizzi, Hetherington
         & Basralian
        25 Main Street
        Court Plaza North
        Hackensack, New Jersey 07602

JOHN J. GIBBONS, ESQUIRE
Gibbons, Del Deo, Dolan,
 Griffinger & Vecchione
One Riverfront Plaza
Newark, New Jersey 07102-5497

 Attorneys for Appellant

STEPHEN M. GREENBERG,
 ESQUIRE
Stern & Greenberg
75 Livingston Avenue
Roseland, New Jersey 07068

 Attorney for Appellee

OPINION OF THE COURT

SCIRICA, Circuit Judge.

This is the second appeal of a damages award for wrongful termination of a franchise under the New Jersey Franchise Practice Act ("NJFPA"). In the first appeal, we vacated the award and remanded for a new trial on the appellant's NJFPA damages. See Cooper Distrib. Co. v. Amana Refrigeration, Inc., 63 F.3d 262 (3d Cir. 1995) (Cooper I). The plaintiff appealed again following the second trial. After argument, we remanded so that the District Court could rule on one open matter. Thereafter, the parties returned to this Court. We will affirm in part, reverse in part, and remand for further proceedings.

I.

From 1961 to 1991, Cooper Distributing Company ("Cooper") was a distributor of appliances manufactured by Amana Refrigeration, Inc. ("Amana"). Under the terms of their distribution contract, Cooper bought a specified quantity of products at a wholesale discount from Amana and then resold them to retailers, who in turn sold them to consumers. Although Cooper did not have exclusive distribution rights under the contract, Cooper was the only distributor of Amana products in its territory, which

2

primarily encompassed New York, New Jersey, and Connecticut. By 1991, Cooper's sales of Amana products generated $20 million per year in revenues and constituted about 80 percent of Cooper's business.

In November 1991, Amana attempted to terminate its distribution relationship with Cooper on ten days' notice, citing a provision in the distribution contract allowing either party to do so. It is undisputed that the attempted termination was motivated by changes in Amana's nationwide business strategy rather than unsatisfactory performance on Cooper's part.

Cooper sued Amana in New Jersey state court, alleging four causes of action: (1) unlawful termination without good cause in violation of the NJFPA; (2) breach of contract; (3) breach of the implied obligation of good faith and fair dealing; and (4) tortious interference with prospective economic advantage. Amana removed the case to federal district court in New Jersey. In February 1992, the District Court issued a preliminary injunction prohibiting Amana from " `taking any action whatsoever to limit . . . or in any way interfere with Cooper's activities as a distributor of Amana products.' " Cooper I, 63 F.3d at 267-68 (quoting the injunction). The injunction was still in effect when the parties went to trial in February 1994.

At trial, the jury found Amana liable on all four counts and awarded Cooper $4.375 million in compensatory damages on its NJFPA claim, $2 million on its breach of contract claim, and zero in actual damages on both of the remaining two common-law claims. It also awarded Cooper $3 million in punitive damages on the tortious interference claim. Accordingly, on March 8, 1994, the District Court entered a judgment of $9.375 million in damages to Cooper and dissolved the injunction, thereby allowing Amana to terminate the distributorship and pay damages.

On appeal, we affirmed the judgment of liability under the NJFPA but held the District Court should have found as a matter of law that there was no breach of contract; therefore, we reversed the award of $2 million in damages on that claim. See Cooper I, 63 F.3d at 280-81. We also reversed the award of $3 million in punitive damages for

tortious interference because no actual damages had been found, see id. at 284, and we vacated the award of $4.375 million in NJFPA damages and remanded for a new trial on that issue, see id. at 277-78.

Cooper I identified two defects in the original calculation of NJFPA damages. First, the jury had mistakenly assumed that Cooper had an exclusive right to sell Amana products to retailers in its territory. This assumption, we found, was expressly contradicted by the unambiguous terms of the contract and it resulted in a significantly higher valuation of the franchise. See id. at 278. Second, we held the franchise had been valued as of the wrong date. The District Court had instructed the jury to value the franchise as of November 8, 1991, the date on which Amanafirst attempted to terminate the franchise. As we pointed out, however, the more appropriate valuation date was March 8, 1994, the date on which the franchise actually was terminated. Cooper had continued to earn income from its franchise after November 8, 1991. Thus, to value the franchise as of that date would bestow upon Cooper a "double recovery," as Cooper would receive both the value of the franchise on November 8, 1991 -- that is, the present value of lost future earnings from the franchise -- and the actual earnings from the franchise after that date. Id. Consequently, we held "the proper date of valuation in this case is March 8, 1994," id., and remanded for "a new trial on [NJFPA damages] consistent with this opinion," id. at 285.

On remand, the District Court ruled prior to trial that the "only issue" in the case was the franchise's fair market value to a hypothetical buyer and seller as of March 8, 1994. Thus, Cooper was barred from presenting evidence relating to additional damages theories, including the value of the franchise to the actual parties and the amount of lost profits Cooper allegedly suffered before March 8, 1994.

In the second trial, Cooper received an award of $377,000. Cooper now appeals, asserting four grounds for reversal: (1) the District Court erred in limiting the scope of the second trial to a determination of the fair market value of the franchise as of March 8, 1994; (2) the court's jury instructions were misleading and erroneous; (3) the court

4

improperly allowed hearsay testimony and failed to give effect to stipulations by Amana; and (4) the court erroneously denied Cooper's post-trial motion for prejudgment interest.

II.

A. Valuation of the Cooper Franchise

Cooper argues the District Court misconstrued our mandate in Cooper I, preventing it from proving important components of its damages: the value of the franchise to Cooper and Amana specifically, rather than to a hypothetical buyer and seller; Cooper's lost profits between November 8, 1991 and March 8, 1994; the value of Cooper's complementary distribution lines; and the enhanced value of the franchise due to Amana's subsequent expansion of its distribution line. Amana responds that the District Court's restriction of damages to the fair market value of the franchise as of March 8, 1994 was not only consistent with Cooper I, but was required by the New Jersey Supreme Court's decision in Westfield Centre Serv., Inc. v. Cities Serv. Oil Co., 432 A.2d 48 (N.J. 1981).

We exercise plenary review on these issues because they involve whether the District Court properly interpreted the law of the case as set forth in Cooper I. See Feather v. United Mine Workers of America, 903 F.2d 961, 964 (3d Cir. 1990). It is "axiomatic" that on remand after an appellate court decision, the trial court "must proceed in accordance with the mandate and the law of the case as established on appeal." Bankers Trust Co. v. Bethlehem Steel Corp., 761 F.2d 943, 949 (3d Cir. 1985). Moreover, where (as here) the mandate requires the District Court to proceed in a manner "consistent" with the appellate court decision, the effect is " `to make the opinion a part of the mandate as completely as though the opinion had been set out at length.' " Id. (quoting Noel v. United Aircraft Corp., 359 F.2d 671, 674 (3d Cir. 1966)).

Our opinion in Cooper I did not expressly address whether the measures of damages that Cooper now proposes should be included in the scope of the second

trial. As noted, we remanded in order for the District Court to remedy two errors in the original calculation of damages: the jury's mistaken assumption that Cooper had possessed an exclusive distributorship, and its valuation of the franchise as of the wrong date. Cooper does not claim either error was repeated in the second trial. Moreover, to the extent our opinion provided guidance as to the specific method by which damages should be calculated on remand, we held the franchise should be valued according to " `either the present value of lost future earnings or the present market value of the lost business, but not both.' " 63 F.3d at 278 (quoting Johnson v. Oroweat Foods Co., 785 F.2d 503, 507 (4th Cir. 1986)). The District Court's choice of the latter of these two measures was consistent with that mandate.

It was also consistent with New Jersey law, which controls in this diversity case. The statute itself does not specify a particular measure of damages: "Any franchisee may bring an action against its franchisor for violation of this act . . . to recover damages sustained by reason of any violation of this act and, where appropriate, shall be entitled to injunctive relief." N.J. Stat. Ann.S 56:10-10 (West 1998). But in Westfield, the New Jersey Supreme Court held that

> a franchisor who in good faith and for a bona fide reason terminates, cancels or fails to renew a franchise for any reason other than the franchisee's substantial breach of its obligations has violated [the NJFPA] and is liable to the franchisee for the loss occasioned thereby, namely, the reasonable value of the business less the amount realizable on liquidation. These are the damages contemplated by N.J.S.A. 56:10-10 . . . .

Westfield, 432 A.2d at 57. The court further held that "[r]easonable value would be that price upon which willing parties, buyer and seller, would agree for the sale of the franchisee's business as a going concern." Id. at 55. It is clear from the court's discussion that these "willing parties" are hypothetical buyers and sellers, not the actual parties in the case: for example, the court noted the potential usefulness of IRS valuation techniques and expert testimony based on comparable sales in the area. See id.

6

Westfield appears to be the only case that discusses the proper measure of damages under the NJFPA.

Here, Amana terminated Cooper "in good faith and for a bona fide reason" and not for "the franchisee's substantial breach of its obligations." See Cooper I, 63 F.3d at 267 (describing the business reasons for which Amana decided to terminate Cooper's franchise). Thus, under Westfield Amana is liable to Cooper for a loss equal to the value of the franchise as measured by its fair market value to a hypothetical buyer and seller, minus the value of assets that can be liquidated by Cooper.

The question is whether this measure of damages necessarily excludes the other measures advanced by Cooper. As we discuss, Westfield and our mandate in Cooper I exclude most of these additional damages theories, but they do not refute Cooper's "lost profits" argument.

1. The Value of the Franchise to Cooper and Amana

Cooper contends the District Court should have allowed it to present evidence of the franchise's value to the parties themselves, rather than its market value as measured by what third parties would be willing to pay for it. As noted, however, Westfield suggests the opposite. See 432 A.2d at 55 ("Reasonable value would be that price upon which willing parties, buyer and seller, would agree for the sale of the franchisee's business as a going concern."). Moreover, our opinion in Cooper I refers, variously, to "the current value of [the] business," "the value of the business as a going concern," and "the present market value of the lost business." 63 F.3d at 278. Such terms suggest an objective, not subjective, measure of the franchise's value. Accordingly, we believe the District Court correctly determined that the purported value of the franchise to Cooper and Amana themselves was not a proper measure of damages.

2. Pre-March 8, 1994 Lost Profits

Cooper argues that although Amana did not actually succeed in terminating the franchise until March 8, 1994, Cooper's uncertain status before that date caused a decline in its profits during the November 1991 to March 1994

7

period. The District Court appears to have acknowledged this point. See App. at 319 (statement of the District Court that "I can't believe that . . . [Amana's counsel] would have for a moment attempted to argue in his opening that the jury's verdict in the first trial established Mr. Cooper suffered no harm from Amana's conduct during the period from mid-1991 to March 8th, 1994"). Lost profits would not be accounted for in a valuation of the franchise as of March 8, 1994 because that value represents only the lost future profits of the business: that is, the present value of the profits Cooper would have earned after March 8, 1994, had its franchise not been unlawfully terminated. See Cooper I, 63 F.3d at 278. Thus, Cooper contends the pre-March 8, 1994 lost profits must be included in the damages calculation in order to make it whole. In response, Amana argues that because Westfield identifies only one measure of damages (fair market value of the franchise at the time of termination), it implicitly forbids other measures, such as lost profits prior to termination.

We find no support for Amana's argument, either in Westfield or elsewhere in New Jersey law. The franchisee in Westfield was a gasoline station owner whose business was not affected by uncertainty surrounding his franchise status. Consequently, the fair market value at the date of his franchise's termination was a complete and comprehensive measure of the harm he suffered. There is no reason to believe Westfield precludes lost-profit damages in a case where attempted termination of the franchise itself causes a substantial decline in business. In fact, Westfield's reference to "the legislative intent to make franchisees economically whole" supports the inclusion of lost profits. 432 A.2d at 58 (awarding attorney's fees); see also Winer Motors, Inc. v. Jaguar Rover Triumph, Inc., 506 A.2d 817, 823 (N.J. Super. Ct. 1986) (holding that under Connecticut franchise law, an award for improper termination "should have two components, the losses provable to that date, and the future damages based upon the reasonably anticipated net future profits of the dealership," and noting that there is "little difference between the law of New Jersey and Connecticut on this subject"). Here, Cooper advances the plausible claim that retailers were aware of Cooper's ongoing litigation with

8

Amana and consequently did not know whether they could count on Cooper for long-term sales and warranty service on Amana products. As a result, at least some retailers may have chosen to reduce or eliminate their dealings with Cooper even before the date of actual termination.

Although we express no opinion on the extent of Cooper's lost profits, or even their existence, we believe it was error to preclude Cooper from presenting evidence on the issue. This component of damages was not expressly commanded by Cooper I or Westfield, but it is undeniably a part of the loss suffered by Cooper as a result of Amana's unlawful termination of its franchise. Inclusion of lost profits during this period is the logical result of shifting the valuation date from November 1991 to March 1994. Accordingly, we will reverse and remand for a new trial on this issue.

3. Cooper's Loss of Complementary Lines

Cooper also contends its damages should have included the value of what it calls "complementary lines," that is, product lines carried by Cooper for the sole purpose of complementing its Amana products. The complementary lines consisted primarily of Hardwick, In-Sink-Erator, and Dacor products. Cooper alleges that when it lost the Amana franchise, its ability to sell these products at a profit was destroyed.

We do not believe this issue warrants a new trial. Westfield specifically instructs that the value of assets retained by the franchisee is to be deducted from the damages award. See 432 A.2d at 57. It may be true that Cooper would not have purchased the complementary lines if it did not also sell Amana products. But that fact does not have any legal significance. Cooper acknowledges that it was not required to purchase the additional lines, only "encouraged" to do so by Amana. The complementary lines fall squarely within the category of assets retained by the franchisee under Westfield, and the District Court properly excluded their value from the damages calculation.

4. Enhanced Value of the Franchise

Cooper also contends the District Court erred in refusing to allow it to amend its expert report to reflect the

"enhanced value" that Cooper's franchise would have received between November 1991 and March 1994, if Amana had allowed it to partake in the expansion of Amana's products lines that occurred during that time. Allegedly, three other Amana distributors were given access to the additional brands (Caloric, Modern Maid, and Speed Queen) that had been consolidated by Amana's parent company, Raytheon. Cooper claims it was denied access to these additional lines solely because Amana was in the process of attempting to terminate Cooper's franchise; thus, Cooper should be allowed to include the value of these lines as a component of its damages.1

It is unclear whether Amana denied Cooper access to the additional product lines solely because of the pending litigation. But in any event, Amana was under no legal obligation to offer an expanded product line to Cooper, only to maintain the status quo as required by the injunction that was in effect at the time. As of March 8, 1994, Cooper had never had access to the additional lines and did not have the prospect of access in the future. We believe the expansion offered to other Amana distributors was properly excluded from the calculation of the Cooper franchise's value on that date.

B. Jury Instructions

Cooper attacks the District Court's jury instructions on a myriad of grounds, all of which fall within one of two general criticisms: (1) the District Court failed to explain the law thoroughly; and (2) the court's pricing instructions were unfairly prejudicial to Cooper.2 The parties dispute whether Cooper's objections to the jury instructions were

_____

1. Contrary to Cooper's assertions, we find no defect in the procedure by which the motion to amend the report was denied. In any event, we believe Cooper's argument regarding enhanced value fails on the merits.

2. Cooper also makes the related claim that the District Court should have allowed Cooper to introduce into evidence a historical pricing analysis showing the discounts that Cooper had traditionally received from Amana. We do not believe the court abused its discretion in refusing to admit the exhibit, particularly since Cooper's expert was allowed to testify about Cooper's historical discounts and profit margin without the exhibit.

timely made, and accordingly what the appropriate standard of review is.

We exercise plenary review to determine whether jury instructions misstated the applicable law, but in the absence of a misstatement we review for abuse of discretion. See Walden v. Georgia-Pacific Corp., 126 F.3d 506, 513 (3d Cir. 1997); Savarese v. Agriss, 883 F.2d 1194, 1202 (3d Cir.1989). If the party claiming error did not make a timely objection, we review for plain error. See Ryder v. Westinghouse Elec. Corp., 128 F.3d 128, 136 (3d Cir. 1997). Fed. R. Civ. P. 51 provides that a party may not assign as error defects in jury instructions unless the party distinctly stated its objection before the jury retired to consider its verdict. See Fed. R. Civ. P. 51; accord Smith v. Borough of Wilkinsburg, 147 F.3d 272, 277 (3d Cir. 1998) ("[T]o preserve an issue for appeal, counsel must state distinctly the matter objected to and the grounds of the objection."). We will reverse only if the trial court committed plain error that was "fundamental and highly prejudicial, such that the instructions failed to provide the jury with adequate guidance and our refusal to consider the issue would result in a miscarriage of justice." Ryder, 128 F.3d at 136.

Cooper did not object at the close of jury instructions. When the District Court asked Cooper's counsel if he had any objections after the jury charge, he responded only by correcting one of the exhibit numbers. Moreover, Cooper had previously participated in a charge conference in which both parties met with the judge and agreed on mutually satisfactory language on all the instructions. It appears from the record that the District Court gave the instructions agreed upon by the parties at the charge conference.

Nevertheless, Cooper claims its objections were properly preserved and should receive plenary review. Cooper relies upon two cases. In the first, Bowley v. Stotler & Co., 751 F.2d 641 (3d Cir. 1985), we held the appellant's objection was preserved because the trial court expressly told appellant that his previous written objections would constitute an automatic objection to every adverse ruling and that his objections would be preserved in the record. See id. at 647. But Bowley is of little help to Cooper, who

received no such assurance from the District Court. In the second, Thornley v. Penton Publishing, Inc., 104 F.3d 26 (2d Cir. 1997), the Court of Appeals for the Second Circuit held that failure to object is sometimes excused when a party has "previously made its position clear to the trial judge and any further attempt to change the judge's mind would have been futile." Id. at 30. Arguably, Cooper had made its position known to the District Court in its proposed jury instructions and at the charge conference, and therefore believed that further objection would be futile. But this argument is belied by the fact that immediately after giving its instructions, the District Court expressly invited any objections by the parties. Cooper did not object at this time. Therefore, we believe Cooper's exceptions to the jury instructions were not preserved and are subject to plain error review.

As noted, Cooper proffers two basic challenges, each of which includes more specific criticisms. First, Cooper claims the District Court did not thoroughly explain the relevant law to the jury. According to Cooper, prior to trial the jury should have been instructed as to: the definition of a "franchise"; the meaning of the "license" and "community of interest" elements of an NJFPA violation; the legal standards for an implied covenant of good faith and fair dealing; and the meaning of "constructive termination." Cooper claims the District Court's failure to issue a preliminary statement explaining these issues to the jury constitutes reversible error.

In our view, the District Court correctly determined that instructions on these ancillary legal issues were unnecessary and could mislead the jury. As Amana points out, it had already been established in Cooper I that Amana was liable to Cooper for wrongful termination under the NJFPA. Thus, there was no longer any dispute that Cooper was a "franchise" within the meaning of the NJFPA and that the "license" and "community of interest" elements of the NJFPA had been satisfied. Similarly irrelevant are the issues of the implied covenant of good faith and fair dealing and the meaning of "constructive termination." The liability phase of the trial was over; the only issue in the second trial was the amount of damages owed to Cooper for

12

Amana's actual, not constructive, termination of the franchise. Revisiting these issues, especially with a "detailed annotation to New Jersey statutory and case law" -- Cooper's own description of its proposed jury charge -- would only have confused the jury. We believe the District Court's ruling was correct, and certainly was not plain error.

Second, Cooper argues the District Court's instructions on pricing were erroneous and misleading to the jury. Cooper requested that the jury be instructed as follows:

> Amana cannot as of March 8, 1994 materially alter the historical relationship between the parties and must in its pricing to Cooper recognize that Cooper functions as a wholesale franchise, not as an appliance retailer.. . . Amana's pricing of products to Cooper must take into consideration Amana's historical relationship with Cooper as a franchise as well as the traditional wholesale discount to Cooper given by Amana when compared to the prices Amana generally charged for the same products to retailers who purchased appliances directly.

The District Court rejected this proposed charge and instead instructed the jury that Amana "could not price its appliances to Cooper, a wholesale distributor, or to retail dealers in Cooper's assigned territory, in such a way that Cooper would not have a reasonable opportunity to compete for Amana-brand sales in that territory."

We do not believe the court misstated the law or misled the jury. The court's instruction adequately communicated the notion that in determining the fair market value of Cooper's franchise as of the termination date, the jury must assume that Amana's pricing to Cooper would not be affected by the ongoing litigation between the two. An explicit reference to historical pricing tactics was not necessary to make this point. In any event, it is clear the District Court's pricing instruction was not plain error so "fundamental and highly prejudicial" as to"result in a miscarriage of justice." Ryder, 128 F.3d at 136.

C. Evidentiary Rulings

Cooper also challenges a number of the District Court's evidentiary rulings. We review for abuse of discretion. See

13

SEC v. Hughes Capital Corp., 124 F.3d 449, 456 (3d Cir. 1997).

1. Evidence of Amana's Inconsistent Legal Positions

In his opening statement, Amana's counsel told the jury that Amana did not have the right to make direct sales in Cooper's territory. After Cooper objected successfully to that statement,3 Amana's counsel modified it and said that at the time in question, Amana did not believe it had the right to make direct sales in Cooper's territory. Cooper now appeals the District Court's refusal to allow Cooper to introduce evidence purportedly showing that Amana did in fact believe that it had such a right: namely, a segment of Amana's post-trial brief from the first trial and a statement by Amana's counsel in oral argument on a motion.

The record shows the District Court fully considered the request for admission but denied it on the ground that it would be more time-consuming than probative. Instead, the court allowed Cooper to admit a redacted version of the order holding that Amana had the right to make direct sales and invited Cooper to revisit the issue at a later time, which Cooper never did. We see no abuse of discretion in the District Court's exclusion of these materials.

2. Alleged Failure to Give Effect to Pretrial Stipulations

Cooper argues the testimony of former Amana executive Charles Mueller violated pretrial stipulations. On cross-examination, Mueller stated that Amana had intended to compete directly with Cooper in Cooper's sales territory and that Amana's president Robert Swam would "necessarily" have been involved in that decision. According to Cooper, these statements contradicted Amana's internal "five-year plans," produced during post-remand discovery and stipulated to represent Amana's company policy, as well as a pretrial statement made by Amana's counsel to the District Court to the effect that Swam should not be deposed because he had no knowledge of the issues to be tried. But Cooper did not object to Mueller's statements at trial: in fact, Cooper elicited them on cross-examination.

_____

3. We held in Cooper I that Amana did have such a right. See 63 F.3d at 279-80.

14

Cooper's argument accordingly seems to be that the District Court's failure to strike the statements, sua sponte, that Cooper itself brought out on cross-examination constitutes reversible plain error. We find this argument meritless.

3. Other Evidentiary Challenges

Cooper levels two additional challenges to the District Court's evidentiary rulings. First, Cooper claims the court wrongly denied its objection to hearsay testimony by Cooper's own principal, Bill Cooper, on cross-examination. As the record shows, however, Cooper objected to the question as being argumentative, not hearsay:

> Q Do you know that [sic] he has said about this --
> this concept of somehow Cooper, after March 8,
> 1994 capturing all of the sales in your territory is
> absurd?
>
> A Well, that's not my --
>
>    MR. LEHN: Objection, Your Honor, that's
>    argumentative.
>    [the objection is overruled]
>
> Q You know he said that, don't you?
>
> A Yes. I know he also said that no manufacturers
> want to compete with their own distributors and no
> one has dual distribution.
>
> Q We'll get to that, also.

The question was not argumentative, and the District Court properly overruled Cooper's objection on that basis. Even if Mr. Cooper's response was inadmissable hearsay, the District Court was not required to supply the proper basis for objection. Moreover, once the statement was admitted, the court did not abuse its discretion in allowing Amana's counsel to refer to it in his closing argument.

Second, Cooper argues the District Court did not "permit Cooper to explore the implications of [Amana's valuation expert's] `model' by cross-examination." Although this statement implies that the District Court denied Cooper the right to cross-examine Amana's expert, the record reveals that Cooper engaged in a lengthy cross-examination. The

15

District Court merely sustained Amana's objection to Cooper's request that the expert calculate Cooper's potential 1994 sales on the witness stand by converting the actual sales by another distributor in another area of the country and then adjusting for differences in population density. The District Court did not abuse its discretion in cutting off this line of questioning on the basis that it was more prejudicial than probative.

D. Prejudgment Interest

Cooper also claims the District Court erred in denying prejudgment interest for the time period between the date of the wrongful termination and the jury's award of $377,000 in the second trial. (See Order of Oct. 8, 1998).4 The District Court refused to grant prejudgment interest because of what it termed "preposterous" valuation theories advanced by Cooper in the second trial. See Cooper Distrib. Co. v. Amana Refrigeration, Inc., No. 91-5237, op. at 5 (Oct. 8, 1998). Specifically, the court held: "Because . . . Cooper persisted in pressing estimates of damages which, in fact, bore no resemblance to reality and were `so unreasonable as to amount to bad faith,' settlement was precluded. It would not be equitable to award prejudgment interest and Cooper's application is denied." Id. at 7 (quoting In re Bankers Trust Co., 658 F.2d 103, 109 (3d Cir. 1981)).

Both parties have submitted supplemental briefs discussing the propriety of the District Court's decision to deny prejudgment interest. Because of our disposition of the other claims, however, we believe it would be premature to decide the issue now. The determination of Cooper's lost

_____

4. In Cooper I, we affirmed the District Court's denial of prejudgment interest on its original NJFPA award of $13.475 million. We held that regardless whether the NJFPA claim was considered to arise in contract or tort, prejudgment interest was inappropriate because Cooper was not denied the use of its franchise while the preliminary injunction was in effect and accordingly, "Cooper's franchise existed until the date of judgment." 63 F.2d at 285. Consequently, no prejudgment interest was appropriate for the time period between November 1991 and March 8, 1994. This appeal presents the separate issue of whether Cooper is entitled to prejudgment interest for the period from March 8, 1994 until October 22, 1997, the date of judgment in the second trial.

16

profits will require a new trial and, potentially, a new award of damages. It is impossible to predict either the date of judgment or the amount of damages to be awarded. Furthermore, to the extent the award of prejudgment interest is a matter of equitable discretion based upon the parties' conduct, we note the parties' conduct is not yet complete--the parties must return to the District Court and reinstitute proceedings on the issue of lost profits. Accordingly, we will vacate the District Court's denial of prejudgment interest, which may be raised, if at all, after the outcome of the new trial.

III.

We believe the District Court's decision was correct on all issues except its exclusion of evidence regarding Cooper's lost profits. Accordingly, we will affirm the judgment in part, reverse in part, and remand for a determination of the amount of lost profits, if any, that Cooper sustained between November 1991 and March 8, 1994 as a result of Amana's unlawful termination of Cooper's franchise. Because our disposition of these issues requires further proceedings, we will also vacate the District Court's denial of prejudgment interest pending resolution of the proceedings.

Each party to bear its own costs.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

17