INTERCON ENTERPRISES, INC.

v.

LG INTERNATIONAL (AMERICA), INC., Appellant.

No. 08–4827.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Nov. 18, 2009.

Opinion Filed: Dec. 7, 2009.

Daniel S. Sweetser, Esq., Szaferman, Lakind, Blumstein, Blader & Lehmann, Lawrenceville, NJ, for Intercon Enterprises, Inc.

Eric I. Abraham, Esq., Hill Wallack, Princeton, NJ, Kenneth M. Van Deventer, Esq., Riker, Danzig, Scherer, Hyland & Perretti, Morristown, NJ, for Appellant.

Before: RENDELL, BARRY and CHAGARES, Circuit Judges.

## OPINION

BARRY, Circuit Judge.

This case arises out of a dispute over the terms of an oral agreement between LG International (America), Inc. ("LGIA") and Intercon Enterprises, Inc. ("Intercon"), whereby LGIA, a fiber optic cable importer, agreed to pay sales commissions to Intercon. Three years into the agreement, Intercon was not satisfied with the amount of the commissions it had received, and brought a breach of contract claim [1] against LGIA in the District Court. After a trial, a jury returned a verdict for Intercon and awarded $805,009.25 in damages.[2] LGIA raises two issues on appeal, both related to the jury instructions: that the Court erred (1) in refusing to include in the breach of contract instruction a statement that a "party seeking sales commissions, pursuant to an oral contract, [must] establish that it was the 'efficient producing cause' of the sale," and (2) in giving a good faith and fair dealing instruction, because neither party pleaded anything about good faith and fair dealing, and erred, in any event, by misstating the language of the instruction. We will affirm.

---

1. The complaint also included a cause of action for quantum meruit, which the District Court dismissed in its order partially granting LGIA's motion for summary judgment.

2. LGIA misstates the amount of the verdict as $1,085,302.06, (LGIA Br. at 5), which is actually the amount of the final judgment, including pre-judgment interest. (A. at 1.)

## I. Factual Background and Procedural History

In 1999, Intercon's owner, Kwan Kim, contacted Kevin Shon, then a salesperson at LGIA, about importing South Korean fiber optic cable for a cable television company where Mr. Kim had a contact. In early 2000, Intercon and LGIA entered into the oral sales commission agreement referenced above (the "Contract") whereby Mr. Kim agreed to introduce LGIA to additional potential customers. Soon thereafter, LGIA began receiving orders for fiber optic cable.

During the next three years, LGIA made significant sales of fiber optic cable, including the sales at issue in this case to two cable television companies. LGIA sold nearly $25 million in fiber optic cable to Adelphia Communications Company ("Adelphia") and nearly $25 million to Comcast Corporation ("Comcast"). For these sales, Intercon believes it was entitled to commissions of two percent of the sales volume, for a total of $499,000 and $497,000 for sales to Adelphia and Comcast, respectively. LGIA sees it differently, and, until this litigation, had paid no commissions to Intercon for the Adelphia sales and only $192,000 for the Comcast sales.

At trial, neither party disputed the existence of the Contract, but two of its terms were hotly contested. As the District Court instructed the jury,

> Intercon claims that when it brought the idea of selling cable in the United States to LGIA, it expressly required LGIA to agree that Intercon would be the exclusive sales agent for all sales LGIA made to ... Comcast and Adelphia. Thus, Intercon alleges that as a result of introducing this business opportunity to LGIA, LGIA agreed to pay it a 2 percent commission on all Comcast and Adelphia sales, regardless of Intercon's involvement in the processing of orders from these companies.

(A. at 467.) By contrast, LGIA claimed that it "had an agreement with Intercon pursuant to which [LGIA] would pay a sales commission on all sales of fiberoptic cable procured by Intercon [and] that Intercon was required to produce a customer who was ready, willing and able to perform." (*Id.*) The other somewhat heated issue concerned the amount of the commission percentage.

With respect to the sales made to Adelphia, LGIA's position was that Intercon "did almost nothing," (A. at 440), and that LGIA had to "take up the task of trying to bring in Adelphia business" itself (A. at 441.) LGIA presented evidence at trial that Intercon had not earned any commission for the Adelphia sales because Intercon had not procured the Adelphia sales; that, in fact, LGIA had hired a second broker to facilitate those sales.

In its closing argument, Intercon argued, in essence, that LGIA's hiring of a second broker for the Adelphia account did not excuse LGIA's contractual duty to pay Intercon commissions for LGIA's sales to Adelphia. Intercon asked the court for an instruction on the implied covenant of good faith and fair dealing to complement Intercon's convoluted argument to the jury that the implied covenant of good faith and fair dealing prevented LGIA from using its decision to hire a second broker as an excuse for not paying the Adelphia commission to Intercon. The District Court gave the following instruction:

> Good faith and fair dealing. The law implies a requirement that each party to a contract must act in good faith and deal fairly with the other party in performing or enforcing the terms of the contract. This implied agreement is part of the contract just as the contract expressly states this good faith and fair

dealing requirement. To act in good faith and deal fairly, the parties must act honestly towards each other when informing or enforcing the contract. The parties shall not do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.

In this case, LGIA asserts that one of the reasons Intercon is not entitled to a commission on its sales to Adelphia is because it used another agent relating to its Adelphia sales. In response, Intercon claims that under the duty of good faith and fair dealing that I have just explained, LGIA was not permitted to take any action to destroy Intercon's ... claims that LGIA was not permitted under the parties' contract to hire another agent, and that its decision to do so for its Adelphia sales does not excuse LGIA's obligation under the contract to pay Intercon the 2 percent commission on all Adelphia sales.

(A. at 469.)

As to breach of contract, the District Court instructed the jury that it could "only render a verdict in favor of Intercon if [it] determine[d] that it proved it is entitled to compensation from LGIA pursuant to the specific terms of its agreement with LGIA." (A. at 466–67.)

## II. Jurisdiction and Standard of Review

The District Court had jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). We have jurisdiction pursuant to 28 U.S.C. § 1291.

The parties dispute whether LGIA made timely objections to the jury instructions and what standard applies on appeal. We exercise plenary review only to ensure that jury instructions do not misstate a legal standard, *Abrams v. Lightolier Inc.*, 50

F.3d 1204, 1212 (3d Cir.1995), and we review the District Court's decision to use particular language in the instructions themselves for abuse of discretion, *Cooper Dist. Co. v. Amana Refrigeration, Inc.*, 180 F.3d 542, 549 (3d Cir.1999). If the party claiming error did not make a timely objection, we review for plain error. *Id.* Fed.R.Civ.P. 51 provides that a party may not assign as error defects in jury instructions unless the party distinctly stated its objection before the jury retired to consider its verdict. *See* Fed.R.Civ.P. 51; *accord Smith v. Borough of Wilkinsburg*, 147 F.3d 272, 277 (3d Cir.1998) ("[T]o preserve an issue for appeal, counsel must state distinctly the matter objected to and the grounds of the objection.").

With respect to the efficient producing cause issue, just as in *Cooper*, the parties reached agreement during the charge conference on the language of the instruction. LGIA did not object at the close of jury instructions. When the District Court solicited objections immediately after instructing the jury, LGIA's lawyer responded by saying, "[n]o exceptions Your Honor." (A. at 477.)

LGIA argues that objecting after the instructions would have been futile since it had already raised the issue in its pre-trial briefing.[3] However, LGIA's prior mention of the issue did not excuse the requirement of a timely objection. *See Cooper*, 180 F.3d at 550 (rejecting appellant's argument that appellant had already raised the issue in its proposed jury instructions and at the charge conference, because "immediately after giving its instructions, the District Court expressly invited any objections by the parties").

With respect to the good faith and fair dealing issue, LGIA argues that it did not

**3.** LGIA's argument that "any further objection by LGIA would have been rude to the Trial Court," (LGIA Reply Br. at 5), is some-

what belied by the fact that LGIA did indeed raise the issue again in its post-trial motions.

have adequate time to object since the issue was raised for the first time at the charge conference,[4] where LGIA claims "it certainly objected." Again, this argument does not change the critical point of the *Cooper* analysis—that counsel was given the opportunity to object and declined to do so.

Because LGIA failed to make a timely objection to either of the issues it raises on appeal, we review both issues for plain error.

### III. Analysis

#### A. Effective Producing Cause

■ LGIA argues that the District Court erred by not instructing the jury that Intercon was required to prove that it was the "effective producing cause" of a sale before it could become entitled to commissions. According to LGIA, "[i]t is well-established that under applicable New Jersey law, when there is an oral contract for commissions, a broker 'must establish that he was the 'efficient producing cause' in bringing about the sale.'" (LGIA Br. at

22 (quoting *Inventive Music Ltd. v. Cohen,* 617 F.2d 29, 32 (3d Cir.1980)[5])) This is not a correct statement of New Jersey law,[6] and none of the cases LGIA cites stands for LGIA's proffered proposition.[7]

Instead, as we held in *Vanguard,* New Jersey law applies the "efficient producing cause" presumption when a contract is found to be "silent as to the service required to earn a commission." *Vanguard,* 900 F.2d at 651. In *Vanguard,* we explained that "the parties had agreed carefully to delineate their obligations to each other, [and] reading the agreement as a whole there is not the slightest hint that Vanguard would be due commission on sales or leases regardless of any participation by it in the transaction." *Id.* at 652. Here, under either party's formulation, the Contract was *not* silent as to the service required to earn a commission.[8]

The District Court's instructions eliminated the possibility that the jury would find in favor of Intercon while also finding that the Contract was "silent as to the service required to earn a commission."

---

4. LGIA's briefing is self-contradictory. Its opening brief claims that the issue was first raised at the charge conference. (LGIA Br. at 4). Its reply brief states that "Intercon first asked the Trial Court to include a breach of good faith and fair dealing charge at the start of the trial." (LGIA Reply Br. at 5). It appears, however, that the matter first came up at the charge conference when LGIA's counsel said that the instruction would "be unfair" because "[w]e didn't have notice that there was going to be an argument ... that there was some breach of this implied covenant." (App. at 415–16).

5. In *Inventive Music,* unlike the case before us, the broker's agreement was silent as to what was required to earn the commission. Further, *Inventive Music* was about a finder's fee, rather than a sales commission, and it is not clear that New Jersey law treats the two categories as substantively analogous.

6. The District Court applied New Jersey law, as do we. It is undisputed that New Jersey substantive law applies.

7. Indeed, we admonished the parties in *Vanguard Telecomm. v. S. New England Tel. Co.,* 900 F.2d 645, 651 (3d Cir.1990) for "inexplicably arguing oral contract theory" when the agreement in dispute was a written contract. *Inventive Music* involved an oral finder's fee agreement which was silent as to the service required to earn a commission. *In Arzoomanian v. British Telecomm., PLC,* 2007 WL 132983 (D.N.J. Jan.12, 2007), there was no contract at all, let alone a contract which spoke to the issue of what service was required to earn a commission.

8. The District Court addressed this issue during the charge conference, explaining that the instruction was unnecessary (apparently as a logical matter) because LGIA already was arguing that Intercon was only entitled to commissions for those sales it procured.

The instruction provided that "[y]ou can only render a verdict in favor of Intercon if you determine that it proved it is entitled to compensation from LGIA pursuant to the *specific terms* of" the Contract.[9] (A. at 466) (emphasis supplied). This language made the *Vanguard* presumption superfluous, given that the jury was limited to rendering a verdict for Intercon only if the Contract was not silent as to the services required to earn a commission. Indeed, we agree with the Court that the instruction LGIA proffered would have added to, rather than subtracted from, the potential for jury confusion.

LGIA makes much of the adjectives we used in *Vanguard* to describe the level of specificity required to overcome the efficient producing cause presumption,[10] i.e., the language needed for a commission contract not to be "silent as to the service required to earn a commission," and argues that there is no way to know whether the jury made such a finding. But the context of *Vanguard* makes clear that a contract overcomes the presumption if it specifically identifies what service is required to earn a commission. The New Jersey cases we cited in *Vanguard* for the specificity language—*Stevenson Co. v. Oppenheimer*, 91 N.J.L. 479, 104 A. 88 (Sup. 1918), *Ettinger v. Loux*, 96 N.J.L. 522, 115 A. 384 (1921), and *Martin Realty Co. v. Fletcher*, 103 N.J.L. 294, 136 A. 498 (Sup. 1927)—require nothing more than what the jury instructions in this case required: a finding that Intercon was "entitled to compensation from LGIA pursuant to the *specific terms* of" the Contract. (A. at 466) (emphasis added).

Moreover, the jury was never confronted even with the possibility that the Contract was silent as to this issue. The evidence, the arguments and the jury instructions all described the Contract as one containing a term addressing what was required to earn a commission. Neither of the parties argued (to the jury) that Intercon was entitled to commissions that it had not earned under the Contract. In fact, despite Intercon's inexplicable statements to the contrary in its brief to this Court, the jury was never confronted with a contract which was "silent as to the services required to earn a commission." *Vanguard*, 900 F.2d at 651.

Even if the jury could have found that the Contract was silent as to the services required to earn a commission, however, the *Vanguard* presumption likely does not apply to oral contracts. As we explained in *Vanguard*, "the presumption is based on public policy intended to effectuate justice between the parties and is not intended to rewrite an agreement which the parties deliberately executed." *Id.* The presumption allows courts to construe the express terms of a written contract without resorting to extrinsic evidence, with its many pitfalls, e.g., credibility. *See Federal Marine Terminals, Inc. v. Worcester Peat Co., Inc.*, 262 F.3d 22, 28 (1st Cir.2001) ("[T]he effect of admitting extrinsic evidence would be to allow one party to substitute his view of his obligations for those clearly stated."). In the case of an oral contract, as we explained in *Vanguard*, "we will be unable to construe it until we can determine what are its terms ...

9. We presume "that juries follow instructions given by the District Court." *United States v. Hakim*, 344 F.3d 324, 326 (3d Cir.2003).

10. For example, in order "[t]o overcome this presumption, an agreement must contain language which explicitly negatives the presumption. The contract language presented must be without qualification, and ... emphatic and specific in statement" and "[a]bsent language which specifically abrogates the common law presumption, that presumption prevails; commissions will only be awarded to a broker who was the efficient cause of the sale." *Id.* at 651.

[which] is best left to a full trial and determination by the jury." 900 F.2d at 650. Because the jury is already charged with probing the parties' intentions and witnesses' credibility in order to cobble together the terms of the oral contract, the *Vanguard* presumption would appear to serve no purpose.

We will not rewrite a contract or make a contract better for either party, *see Vanguard*, 900 F.2d at 651, and a *Vanguard* instruction would have interfered with the jury's fair construction of the Contract. The decision not to give the instruction was not error, much less error so "fundamental and highly prejudicial" as to "result in a miscarriage of justice." *Ryder v. Westinghouse Elec. Corp.*, 128 F.3d 128, 136 (3d Cir.1997).

### B. Good Faith and Fair Dealing

■ According the jury instructions, "LGIA asserts that one of the reasons Intercon is not entitled to a commission on its sales to Adelphia is because [LGIA] used another agent relating to its Adelphia sales." (A. at 469.) Intercon argued that LGIA's decision to hire a second agent did not excuse LGIA's obligation to pay Intercon a commission. The District Court, apparently intending to provide some legal underpinning for Intercon's excuse argument, somewhat inexplicably agreed to employ language (and an instruction) outlining the covenant of good faith and fair dealing. Rather than giving what should probably have been a simple instruction about excuse, the Court gave a brief overview of good faith and fair dealing and the honesty requirement inherent in all contracts, and noted Intercon's argument that "LGIA was not permitted to take any action to destroy Intercon's rights under the parties' contract." (A. at 469.)

The District Court's instruction provided a clear articulation of the appropriate legal standard: that it was up to the jury to determine whether hiring another agent excused LGIA from paying Intercon's commissions. This instruction was surely not an error so plain that it "failed to provide the jury with adequate guidance and our refusal to consider the issue would result in a miscarriage of justice." *Ryder*, 128 F.3d at 136.

Even if we were not on plain error review, a jury instruction constitutes reversible error only if it fails to "fairly and adequately" present the issues in the case without confusing or misleading the jury. *Donlin v. Philips Lighting North America Corp.*, 581 F.3d 73, 79 (3d Cir.2009). Here, if the good faith and fair dealing language was incorrect, it arguably misstated a rule of law, and the instruction is subject to plenary review. *Mosley v. Wilson*, 102 F.3d 85, 94 (3d Cir.1996) (citations omitted). Even so, we would reverse only "if, looking at the charge as a whole, the instructions were capable of confusing and thereby misleading the jury." *Id.* Here, the instructions as a whole are abundantly clear that the case was one about breach of contract and that liability could only attach if the jury found that LGIA had breached its contractual promises to Intercon.

### IV. Conclusion

We will affirm the order of the District Court.