NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-2710
_____

ANTHONY LUIS TORRES,
                                        Appellant
v.

CITY OF PHILADELPHIA; DETECTIVE JENKINS; DETECTIVE PITTS;
JOHN DOE NOS. 1-3, POLICE OFFICERS/DETECTIVES
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-12-cv-03879)
District Judge: Honorable Michael M. Baylson
_____

Argued November 1, 2016
Before: HARDIMAN and GREENAWAY, JR., *Circuit Judges*, and
ROSENTHAL,* *District Judge*.

(Filed: December 21, 2016)

Stuart T. Steinberg
Ellen L. Mossman [Argued]
Dechert LLP
Cira Centre, 2929 Arch St.
Philadelphia, PA 19104

_____

* The Honorable Lee H. Rosenthal, United States District Judge for the Southern
District of Texas, sitting by designation.

*Counsel for Plaintiff-Appellant*&#42;&#42;

Elise M. Bruhl [Argued]
City of Philadelphia Law Department
1515 Arch Street, 17th Floor
Philadelphia, PA 19102
        *Counsel for Defendants-Appellees*

_____

OPINION&#42;&#42;&#42;

_____

HARDIMAN, *Circuit Judge*.

Anthony Torres filed a civil rights suit against the City of Philadelphia and several of its police officers following his conviction for the murder of Tammy Hewitt. Torres claimed he was illegally taken to the homicide unit against his will, beaten, and held for three days before he was charged with Hewitt's murder. At trial, Torres prosecuted claims of illegal seizure/false imprisonment/false arrest, excessive force, and assault or battery against two Defendants: Detectives James Pitts and Omar Jenkins. Defendants prevailed on all counts, and Torres filed this appeal challenging the District Court's jury instructions and evidentiary rulings. Because Torres's claims lack merit, we will affirm.

I

On July 10, Officer Ricardo Rosa apprehended Torres at his mother's home and

---

&#42;&#42; The Court would also like to recognize the work of Kai Yi Xie on behalf of Anthony Torres, performed while a law student at the University of Pennsylvania.

&#42;&#42;&#42; This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

brought him in handcuffs to the homicide unit for questioning in connection with the murder of Tammy Hewitt, who had died at the hospital the day before due to injuries sustained from a severe beating. At the homicide unit, Torres met with Detectives Pitts and Jenkins. The parties disputed what occurred between the three men. The detectives claimed they engaged Torres briefly, leaving him alone after he refused to speak with them. Torres claimed that the detectives continually interrogated him, refused him an opportunity to see a lawyer, kicked and beat him, and broke his finger. Torres remained confined in the homicide unit until he was charged on July 13.

Torres mentioned no injuries to the officer processing him on July 13, but testified that he mentioned his broken finger to personnel at the correctional facility upon his arrival. A July 20 medical record reports a "boney deformity" in Torres's finger. App. 124. Torres was later convicted of murder.

## II[1]

In this appeal, Torres claims the District Court erred with respect to its jury instructions and evidentiary rulings. We address each issue in turn.

## A

Torres argues that the District Court improperly instructed the jury that a seizure would require reasonable suspicion when the lengthy seizure in question clearly required

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1331. We have appellate jurisdiction under 28 U.S.C. § 1291.

probable cause.

Torres contends that this objection was preserved, but the record proves otherwise. Torres's counsel initially objected to the Court's planned instruction that reasonable suspicion is required for a seizure, saying the length of the seizure required probable cause. App. 242–43. However, when the Court offered to compromise with a single interrogatory on "illegal seizure, false imprisonment, [and] false arrest" and asked if Torres's counsel still objected, counsel said "I think that's fine." App. 243. The Court later confirmed it would instruct the jury that seizure required "reasonable suspicion," and counsel did not object at the charge conference or after the charge was read. App. 277, 281, 313, 340.

We will not infer an objection from a contrary preference in instructions, particularly where counsel later assented to the judge's formulation. *See Cooper Distrib. Co. v. Amana Refrigeration, Inc.*, 180 F.3d 542, 550 (3d Cir. 1999). While Torres attempts to analogize his case to *United States v. Russell*, 134 F.3d 171 (3d Cir. 1998), the colloquy between judge and counsel in that case led to a ready inference that "the court understood [counsel's legal complaint] as an objection." *Id.* at 179. The inverse occurred here, as counsel indicated assent to the Court's compromise instruction. Accordingly, we

review for plain error.[2]

Plainly erroneous jury instructions warrant a new trial when they are "fundamental and highly prejudicial, such that the instructions failed to provide the jury with adequate guidance and our refusal to consider the issue would result in a miscarriage of justice." *Cooper Distrib. Co*, 180 F.3d at 549 (citation omitted); *see also Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 612 (3d Cir. 2011) (finding incorrect jury instruction plain error where entire case may have turned on misstatement). Our exercise of plain error review is "discretionary [and] should only be invoked with extreme caution in the civil context." *Franklin Prescriptions, Inc. v. N.Y. Times Co.*, 424 F.3d 336, 341 (3d Cir. 2005) (internal quotations omitted).

The error here does not warrant vacatur and remand. We do agree with Torres that there was obvious error. Supreme Court precedent instructs that probable cause is required to transport a person from his home to a police station and place him in an interrogation room from which he is not free to leave. *See Dunaway v. New York*, 442 U.S. 200, 212–13 (1979) (requiring probable cause for similar seizure). But Torres has not shown that this error was "fundamental and highly prejudicial," such that "our refusal

---

[2] Defendants argue further that if there was error, it was invited error, precluding any review. We disagree, as Torres did not suggest the instructions at issue. The invited error doctrine bars a "defendant [from] complain[ing] on appeal of alleged errors invited or induced by himself." *United States v. Maury*, 695 F.3d 227, 256 (3d Cir. 2012) (citation omitted). A litigant's position must be "unequivocal" for the doctrine to bar later challenge. *Lima v. Newark Police Dep't*, 658 F.3d 324, 333 n.2 (3d Cir. 2011).

to consider the issue would result in a miscarriage of justice." *Cooper Distrib. Co*, 180 F.3d at 549. This is true for two main reasons.

First, the judge instructed the jury to find for Torres on the tripartite interrogatory if it found any of three violations—including false arrest, which was accurately instructed under probable cause. Second, the police likely had probable cause to arrest Torres when he was apprehended. Officer George Pirrone testified that prior to July 10, officers had been told by medical personnel that Hewitt was attacked, and had been told by Hewitt's family that the victim was being abused in her living situation with Torres and Janelle Bennett. In addition, officers had observed Torres behaving erratically and intensely at the hospital.[3]

For these reasons, we do not find a miscarriage of justice warranting vacatur.

## B

Torres next argues that the District Court committed error when it instructed the jury to determine "whether the amount of force [the Defendants] used was the amount

---

[3] Torres's counsel suggested at argument that much of this evidence was inadmissible hearsay. But probable cause may rest upon hearsay, provided there exists "a substantial basis for crediting the hearsay." *United States v. Ventresca*, 380 U.S. 102, 108 (1965); *see also United States v. Welebir*, 498 F.2d 346, 349 n.2 (4th Cir. 1974) (stating that "hearsay, even 'second hearsay', may provide a legal basis for a search warrant" so long as information is otherwise reliable (collecting cases)). Pirrone was permitted to credit his own officers' direct observations, and the testimony of Hewitt's family or physicians—identified informants with reason to know of Hewitt's circumstances—was not obviously unreliable. Furthermore, Torres's own statements were admissible against him. Fed. R. Evid. 801(d)(2).

which a reasonable police officer would have used in conducting an interview of a suspect," noting that "not every push or shove by a police officer, even if it may later seem unnecessary in the peace and quiet of this courtroom, constitutes excessive force." App. 322. Because Torres has not offered evidence showing that counsel objected to this instruction, we will review it for plain error.[4]

Torres cites several cases to support the claim that no force may be used against a compliant suspect during an interrogation. *See, e.g.*, *Bieros v. Nicola*, 860 F. Supp. 226, 233 (E.D. Pa. 1994) (holding that "any amount of force used during an interrogation violates one's constitutional rights"). However, most of those cases allow for the possibility that some force might be reasonable. *See Ware v. Reed*, 709 F.2d 345, 351 (5th Cir. 1983) ("[T]he use of physical violence against a person [in custody] who poses no threat . . . and who does not otherwise initiate action which would indicate to a reasonably prudent police officer that the use of force is justified, is a constitutional violation."); *Riley v. Dorton*, 93 F.3d 113, 116 (4th Cir. 1996) (quoting same and referring to "unjustified physical force") (vacated on rehearing en banc by *Riley v. Dorton*, 115 F.3d 1159 (4th Cir. 1997) (determining that *de minimis* force did not constitute an Eighth

---

[4] We agree with Torres that the Court changed the instruction from its original statement that if the jury accepted Torres's version of events, the force "would be excessive." App. 279. The Court instructed the jury that if they believed Torres, they "*may* conclude that the force he testified . . . defendants used against him was excessive under the circumstances." App. 323 (emphasis added). However, Torres's counsel did not object to this instruction, which mirrors the reasonableness instruction.

Amendment violation)).

Defendants note that the challenged instruction was taken from our model instructions on excessive force—albeit in the context of a stop or arrest. *See* Third Circuit Civil Jury Instructions 4.9. While we agree with Torres that the instruction does not naturally fit the interrogation context—where force generally will be inappropriate—two parts of Torres's testimony made the instruction plausibly appropriate to the case at hand. First, Torres described himself as belligerent during the interrogation, in response to provocation, allowing for an inference that officers may have needed to restrain him in some way. Second, Torres described one instance of potentially *de minimis* contact—an "idiot smack," which Torres compared to "Skipper smack[ing] Gilligan." App. 116.

Finally, even if we were to find obvious error, Torres has not given us reason to infer a miscarriage of justice. In our view, it is quite unlikely that the jury could have both credited Torres's testimony that the officers punched, kicked and otherwise "beat[] the shit out of [him]," and yet found that the force used by the officers was reasonable. App. 85, 90–91.

In sum, absent an obvious error or reason to believe that Torres may have lost his trial "entirely because of" the alleged error, *Harvey*, 635 F.3d at 613, we will not find plain error.

C

8

Torres also claims the District Court made two evidentiary errors that warrant a new trial. Specifically, he objects to the admission of Officer Andrews's pre-July 10 reports as hearsay and the exclusion of a medical report as unauthenticated. Neither decision by the District Court was error.

Officer Andrews's testimony served a valid purpose—showing probable cause at the time of arrest—other than "to prove the truth of the matter asserted." Fed. R. Evid. 801(c)(2). The District Court instructed the jury that the information wasn't "necessarily . . . true," but was relevant to whether officers "had probable cause to charge Mr. Torres." App. 215. While Torres emphasizes the Court's formulation of "probable cause to charge," *id.*, rather than "probable cause to arrest," the challenged information all concerned pre-arrest investigation and was therefore relevant to probable cause at the time of arrest.[5]

Finally, the District Court did not abuse its discretion in excluding Torres's medical report. That report, as the District Court noted, was neither stipulated to nor part of Torres's exhibit list. Furthermore, counsel had no means of authenticating the

---

[5] Neither case cited by Torres to challenge the testimony as invalid dealt with a challenge to probable cause. Rather, both cases questioned the admission of supposed "background" information which may have been used to bolster the evidence for a criminal conviction. *United States v. Price*, 458 F.3d 202, 210–11 (3d Cir. 2006); *United States v. Sallins*, 993 F.2d 344, 346–47 (3d Cir. 1993). While background investigation evidence may be unnecessary where it is "sufficient" for officers to report that they acted "on information received," *Sallins*, 993 F.2d at 346, we agree with the District Court that such evidence is clearly relevant when the existence of probable cause is challenged.

document nor could he argue that it was self-authenticating. Accordingly, the District Court had no basis to allow the document into evidence.

*       *       *

For the reasons stated, we will affirm.

10